UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MACK ESCHER; GUN OWNERS' ACTION LEAGUE; COMMONWEALTH SECOND AMENDMENT; FIREARMS POLICY COALITION, INC.; SECOND AMENDMENT FOUNDATION; NATIONAL RIFLE ASSOCIATION OF AMERICA; and GUN OWNERS OF AMERICA, INC. | |
|      Plaintiffs, | CIVIL ACTION No. 1:25-cv-10389-GAO |
| v. | |
| COLONEL GEOFFREY NOBLE, in his official capacity as Superintendent of the Massachusetts State Police and of the Commonwealth of Massachusetts; JAMIE GAGNON, in his official capacity as the Commissioner of the Department of Criminal Justice Information Services; and HEATH J. ELDREDGE, in his official capacity as the Chief of Police of Brewster, Massachusetts, | |
|     Defendants. | |

## MEMORANDUM IN SUPPORT OF
## HEATH ELDREDGE'S MOTION FOR SUMMARY JUDGMENT

The Defendant, Police Chief Heath Eldredge ("Chief Eldredge"), submits the following Memorandum in Support of his Motion for Summary Judgment. The State Defendants, Colonel Geoffrey Noble ("Colonel Nobel") and Jamie Gagnon ("Commissioner Gagnon") have filed their own Motion for Summary Judgment and Memorandum of Law in Support. The Individual Plaintiff, Mack Escher ("Escher"), and the organizational Plaintiffs, Gun Owner's Action League ("GOAL"), Commonwealth Second Amendment ("C2A"), Firearms Policy Coalition Inc. ("FPC"), Second Amendment Foundation ("SAF"), National Rifle Association of America

1

("NRA"), and Gun Owners of America ("GOA") bring a single claim under 42 U.S.C. §1983 invoking *Ex parte Young* against all three Defendants.

There is no material factual dispute as to the current Massachusetts statutory framework regulating firearms and gun-licensing or their application to Mack Escher. Pursuant to Mass. Gen. Laws c. 140, §129B. There are restrictions on what actions on those whose ages are 18-20 without a License to Carry a firearm ("LTC") who possess a Firearm Identification Card can take. Pursuant to Mass. Gen. Laws c. 140, 129C there are restrictions on the types of firearms those aged 18-20 may possess. Pursuant to Mass. Gen. Laws c. 140, § 131 one must be 21 years of age or older to have a LTC.

 Plaintiffs directly challenge the constitutionality of these sections of Mass. Gen. Law c. 140 as amended by Chapter 135 of the Acts of 2024 and seek to enjoin the Defendants from enforcing this law. The Plaintiff's specifically seek that this Court declare any such restriction on possession for those aged 18-20 years old under Mass. Gen. L. ch. 140, §§ 129B(a), (c), 129C(a), 131(d), and the criminal penalties under Mass. Gen. L. ch. 269, §§ 10(a), (h) as unconstitutional. This Court should deny this request.

I.    **STATEMENT OF FACTS**

Defendant Eldredge relies on *Defendant Heath Eldredge's Statement of Material Facts in Support of His Motion for Summary Judgment,* which he incorporates herein fully by reference. Additionally, he incorporates herein fully by reference the Statement of Facts, Memorandum of Law, and accompanying exhibits of the similarly situated co-defendants Colonel Geoffrey Noble and Commissioner Jaime Gagnon. (Doc. Nos. 39-42).

## II.    STANDARD OF REVIEW

Dismissal under summary judgment is warranted where the moving part shows that there is no genuine dispute of material facts and where the movant is entitled to dismissal as matter of law. Fed. R. Civ. P. 56(a) Where both parties file cross-motions, the court must "review each party's motion independently, viewing the facts and drawing inferences as required by the applicable standard[.]" *Ithier v. Aponte-Cruz*, 105 F.4th 1, 6 (1st Cir. 2024). "[C]onclusory allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact. *Cass v. Town of Wayland*, 383 F. Supp. 3d 66, 80 (D. Mass. 2019) (quotation omitted).[1] Here, the undisputed record establishes that Heath Eldredge is entitled to judgment as a matter of law.

## III.    ARGUMENT

### A.    Plaintiff's Right To Bear Arms Has Not Been Violated

Plaintiffs claim that the Defendants have violated the right to keep and bear arms by precluding 18-to-20-year-olds from purchasing, possessing, and carrying semiautomatic firearms and handguns. Courts have found cause to uphold similar restrictions. See *NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025)(upholding Florida's law setting the minimum age for firearm purchases at 21); *Rocky Mt. Gun Owners v. Polis*, 121 F.4th 96, 124 (10th Cir. 2024) (finding the minimum age for firearm usage should not automatically mirror the minimum voting age). Indeed, such restrictions touch directly on the Commonwealth's authority under the Tenth Amendment, that they may regulate matters of public safety and welfare.

The Supreme Court's decision in *Bruen* provides the controlling framework for evaluating

---

1 Where the non-movant's account is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purpose of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 280 (2007); see also Campos v. Van Ness, 711 F.3d 243, 244 (1st Cir. 2013).

Second Amendment claims under 42 U.S.C. 1983. There, the Supreme Court held that if the Second Amendment's plain text covers the conduct in question, the government bears the burden of demonstrating that its regulation is consistent with historical firearm regulations. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Notably, in Justice Alito's concurring opinion, he clarifies that the *Bruen* decision, "does not expand the categories of people who may lawfully possess a gun." *Id.* at 73. Nevertheless, Plaintiffs assert principally that *Bruen* and the historical analysis framework invalidates broadly the longstanding age restrictions on 18-20 year olds.[2]

The Plaintiffs allege that the state's reasoning for restricting firearm ownership of 18–20-year-olds has no basis in the text or history of the Second Amendment. The Plaintiffs rely principally on the Militia Act of 1792, ch. 33, § 1, 1 Stat. 271 to show that 18-year-olds historically had the right to openly carry firearms and are a part of "the people" the Second Amendment provides the right to bear arms to. This law specifically mandates military service, more similarly analogous to a draft than allowing for free gun ownership. Though federal law obliged 18-to-20-year-olds to join the militia does not mean that 18-to-20-year-olds had an absolute right to buy arms. *See NRA v. Bondi*, 133 F.4th 1108, 1331 (11th Cir. 2025); *Pinales v. Lopez*, 765 F. Supp. 3d 1024, 1046-1047 (D. Haw. 2025). While the militia members in 1792 were responsible for obtaining arms themselves, those members below the age of twenty-one were instead supposed to be armed by the recruits' parents, masters (employers), or guardians.[3]

---

2 *See* Chapter 180 of the Acts of 1998, the "Massachusetts Gun Control Act of 1998", which established that a person must be at least 21 years old to be issued a License to Carry (LTC) a firearm.

3  Robert J. Spitzer, Historical Weapons Restrictions on Minors, 76 RUTGERS U. LAW REV. 101, 110 (2024)(Citing ACTS AND LAWS OF THE STATE OF CONNECTICUT, IN AMERICA 298–99 (Hartford, Hudson & Goodwin 1796); ROBERT & GEORGE WATKINS, A DIGEST OF THE LAWS OF THE STATE OF GEORGIA 461–62 (Philadelphia, R. Aitkin 1800); WILLIAM KILTY, THE LAWS OF MARYLAND (Annapolis, Frederick Green 1800); THE PERPETUAL LAWS OF THE COMMONWEALTH OF MASSACHUSETTS 340 (Worcester, Isaiah Thomas 1789); THE LAWS OF THE STATE OF NEW HAMPSHIRE 422 (Portsmouth, John Melcher 1797); WILLIAM PATTERSON, LAWS OF THE STATE OF NEW JERSEY, REVISED AND PUBLISHED UNDER THE AUTHORITY OF THE LEGISLATURE 440 (New Brunswick, Abraham Blauvelt

A similar argument as made by the Plaintiffs here was made recently and rejected in the 4th Circuit. *See McCoy v. BATFE*, 140 F.4th 568, 572 (2025) (upholding the constitutionality of age-based restrictions under 18 U.S.C. §922(b)(1) to prohibit commercial sale of handguns to individuals under the age of 21). In *McCoy*, the Court explicitly recognized the regulatory tradition preceding the country's founding, finding that several states at that time had enrollment restrictions setting the age of militia service at 21[4] and that parents had a responsibility to furnish their minor with a weapon.[5]

Plaintiffs otherwise rely on the dearth of "historically analogous" laws regulating the gun ownership of young adults at the time of the founding, however the lack of necessity for such regulations does not prove that it would have been accepted that there be no impediments on 18-20 years having full exercise of firearms. This Court should instead look to Reconstruction era law, where such comparable restrictions exist. *Pinales v. Lopez*, 765 F. Supp. 3d 1024, 1047 (D. Haw. 2025) (finding "substantial evidence suggesting that the lack of such regulations could be explained by lack of need and is not necessarily indicative of the scope of the Second Amendment right."). Defendant Eldredge, therefore, has appropriately relied on the constitutionality of Massachusetts law when acting as the licensing authority for the Town of Brewster.

---

1800); THE LAWS OF THE STATE OF NEW YORK 447 (New York, Thomas Greenleaf 1798) (providing New York's Militia Act of 1793); JAMES IREDELL & FRANCOIS XAVIER MARTIN, PUBLIC ACTS OF THE GENERAL ASSEMBLY OF NORTH CAROLINA 159 (New Bern, Martin & Ogden 1804); 14 JAMES T. MITCHELL & HENRY FLANDERS, THE STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801, at 456 (Harrisburg, Harrisburg Publishing Co. 1909); PUBLIC LAWS OF THE STATE OF RHODE-ISLAND AND PROVIDENCE PLANTATIONS 69 (Newport, H & O Farnsworth 1798); BENJAMIN ELLIOTT & MARTIN STROBEL, THE MILITIA SYSTEM OF SOUTH CAROLINA, BEING A DIGEST OF THE ACTS OF CONGRESS CONCERNING THE MILITIA, LIKEWISE OF THE MILITIA LAWS OF THIS STATE 23 (Charleston, A.E. Miller 1835); 12 WILLIAM WALLER HENING, THE STATUTES AT LARGE: BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA 12 (Richmond, George Cochran 1823))

.4 ee, e.g., An Act for Raising Levies and Recruits to Serve in the Present Expedition Against the French, on the Ohio, ch. II, §§ 1-3, reprinted in 6 The Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature, in the Year 1619, at 438-39 (William Waller Hening ed., 1819) (setting age of militia service at 21); Act of June 2, 1779, ch. XXIV, §§ 3-4, 1779 N.J. Acts 58, 59-60 (same); Ga. Code § 981, (1861) (same).

[5]*See NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025).

**B.      There Are Issues Of Standing As To Plaintiffs' Claims**

     *i.*    *Chief Eldredge lacks discretion under the statue to issue a LTC when disqualifying factors exist*

There are standing issues which this Court may also consider as reasons to dismiss the Plaintiffs' claims against Chief Eldredge. Under Mass. Gen. Laws. c. 140, § 121 "Licensing authority" is defined as "the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them; provided, however, that should no such chief or officer exist the colonel of the state police or their designee shall act as the licensing authority." G.L. c. 140, § 121. Chief Eldredge, as the Police Chief of Brewster, is the licensing authority for only the Town of Brewster. As a licensing authority, Chief Eldredge is required to "within 7 days of receipt of the completed application… forward 1 copy of the application and 1 copy of the applicant's fingerprints to the colonel of the state police." *See* G.L. c. 140, §121F(c). Thereafter, the colonel of the state police "shall. . . advise the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without the commonwealth and whether there is reason to believe that the applicant is disqualified from possessing the permit" *See* G.L. c. 140, §121F(d).  For every application, "no permit, card, or license shall be issued unless the colonel of the state police has certified that information available. . . is not in violation of state or federal law."  G.L. c. 140 §121F(a). Chief Eldredge does not have the authority on any application to admit or deny those who the State has deemed disqualified. Since any application requires final approval from Defendant Colonel Geofrey Noble, Chief Eldredge has only general authority over the statute in controversy.

To bring a claim under *Ex parte Young* against a state official, the Plaintiff must show sufficient connection to the enforcement of the challenged laws in question. Without the connection, plaintiffs would be attempting to make the Commonwealth a party to the action. *See*

*Cotto v. Campbell,* 761, 765 (1st Cir. 2025); *see also Doe v. Shibinette*, 16 F.4th 894, 904-905 (1st Cir. 2012) (permitting claims under *Ex parte Young* where the state official sued has authority to grant relief sought). It is not enough that the defendant merely possesses general authority to enforce the laws of the state to show connection. *See Doe v. Holcomb*, 883 F.3d 971, 976-78 (7th Cir. 2018) (holding neither governor's duty to enforce state laws nor state attorney general's duty to support state laws' constitutionality warranted sufficient connection to enforcement of challenged statute to overcome Eleventh Amendment bar); *Free Speech Coal. Inc v. Anderson*, 119 F.4th 732, 738-41 (10th. Cir. 2024) (finding Utah Attorney General's general responsibility for enforcing Utah state law did not constitute enforcement authority to maintain *Ex parte Young* exception). Chief Eldredge has no discretion to allow Plaintiff a valid license to carry, he merely has a duty under the statute to enforce the law. This duty to enforce the law alone does not support the sufficient connection needed to bring an *Ex parte Young* claim against a state official. In *Cotto v. Campbell*, the United States Court of Appeals for the First Circuit has held that a plaintiff's *Ex parte Young* claim fails when "the state officials they sued lack the authority to enforce or change those procedures" 126 F.4th 761, 765 (1st Cir. 2025). Here the Brewster Police Chief certainly has no authority to change Massachusetts law for any unidentified members of the organizational Plaintiffs or to provide Mack Escher a valid LTC.

> ii.     *There is no issue or controversy upon which to base a claim against Chief Eldredge*

Furthermore, Plaintiff Mack Escher has never actually applied for a license to carry from the Town of Brewster. (Exhibit 2). Chief Eldredge is only the licensing authority for the Town of Brewster. Besides Mack Escher, who has *not* applied for a license to carry, the organizational Plaintiffs have identified no members who would qualify as effected parties in the jurisdiction of the Town of Brewster. As such, there is a serious question as to whether the Plaintiffs have

"suffered an injury in fact." *Capen v. Campbell*, 134 F.4th 660, 667 (1st Cir. 2025). The First Circuit has held that while a license or permit denial pursuant to a state scheme is an Article III injury and thus provides standing, the same plaintiff would not have sufficient injury to raise a claim for a different type of license if she "has never applied for such a license, been denied one, or had such a license revoked." *Hightower v. City of Boston*, 693 F.3d 61, 70 (1st Cir. 2012). Here, Plaintiff's admission that he has not applied for a LTC in the Town of Brewster,  spoils any standing he might have and removes any claim against Chief Eldredge, functioning solely as the licensing authority of the state statute for the Town of Brewster.

## II.    CONCLUSION

Summary judgment should enter in favor of the Defendant as to all claims.

Defendant,
Heath J. Eldredge, in his official capacity as the
Chief of Police of Brewster, Massachusetts,

By his attorneys,


Douglas I. Louison (BBO# 545191)
Joseph A. Mongiardo (BBO# 710670)
Louison, Costello, Condon & Pfaff, LLP
Ten Post Office Square, Suite 1330
Boston, MA 02109
dlouison@lccplaw.com
jmongiardo@lccplaw.com
(617) 439-0305

Date: November 20, 2025

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above pleading was filed with the ECF System and sent electronically to the registered participants identified on the Notice of Electronic Filing, with paper copies being sent to those indicated as non-registered participants.

*/s/ Joseph Mongiardo*

Joseph A. Mongiardo

Dated: November 20, 2025