## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MACK ESCHER, et al., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:25-cv-10389-GAO |
| COLONEL GEOFFREY NOBLE, in his | ) |
| official capacity as Superintendent of the | ) |
| Massachusetts State Police and of the | ) |
| Commonwealth of Massachusetts, et al., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

### BRIEF OF GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE AND BRADY CENTER TO PREVENT GUN VIOLENCE AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

[Additional Counsel Listed on Signature Page]

Michelle C. Yau
BBO No. 657236
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
Tel.:  (202) 408-4600
Fax:  (202) 408-4699
myau@cohenmilstein.com

*Counsel of Record for* Amici Curiae

November 25, 2025

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, the undersigned counsel states that *amici curiae* Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence are non-profit organizations that do not have parent corporations or stock, and therefore no publicly held corporation owns 10% or more of their stock.

/s/ *Michelle C. Yau*
Michelle C. Yau
*Counsel for* Amici Curiae

November 25, 2025

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................................ i

IDENTITY AND INTEREST OF *AMICI CURIAE* ..................................................... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................3

ARGUMENT ........................................................................................................................6

I.     THE MASSACHUSETTS LAWS ARE CONSISTENT WITH THE
       HISTORICAL PRINCIPLE OF REGULATING GROUPS THAT POSE A
       HEIGHTENED RISK OF FIREARM VIOLENCE ...........................................................6

II.    MODERN SOCIAL SCIENCE AND NEUROSCIENCE CONFIRM WHAT
       LEGISLATORS HAVE LONG RECOGNIZED:  THAT 18-TO-20-YEAR-
       OLDS POSE A HEIGHTENED RISK OF FIREARM VIOLENCE .................................8

       A.     18-to-20-Year-Olds Attempt Suicide at Disproportionately High Rates,
              and Access to Firearms Increases the Likelihood and Lethality of Those
              Suicide Attempts ....................................................................................9

       B.     18-to-20-Year-Olds Are Increasingly the Perpetrators of Mass Shootings ...........12

       C.     18-to-20-Year-Olds Are Generally More Impulsive Than Older Cohorts ............15

       D.     Minimum-Age Laws Have Proven Effective at Reducing Gun Violence
              Among Minors ....................................................................................17

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of N.J. Rifle & Pistol Clubs* v. *Att'y Gen. N.J.*,
910 F.3d 106 (3d Cir. 2018)................................................................................................2

*Capen* v. *Campbell*,
134 F.4th 660 (1st Cir. 2025)............................................................................................5

*Capen* v. *Campbell*,
708 F. Supp. 3d (D. Mass. 2023) ......................................................................................1

*District of Columbia* v. *Heller*,
554 U.S. 570 (2008)..................................................................................................1, 4

*Graham* v. *Florida*,
560 U.S. 48 (2010)..........................................................................................................16

*Granata* v. *Campbell*,
2025 WL 2495956 (D. Mass. Aug. 29, 2025) ................................................................2, 4

*Hanson* v. *District of Columbia*,
671 F. Supp. 3d 1 (D.D.C. 2023) ......................................................................................2

*Hirschfeld* v. *BATFE*,
417 F. Supp. 3d 747 (W.D. Va. 2019) ..............................................................................2

*Horsley* v. *Trame*,
808 F.3d 1126 (7th Cir. 2015) ..........................................................................................16

*Lara* v. *Evanchick*,
534 F. Supp. 3d 478 (W.D. Pa. 2021)..............................................................................1

*McCoy* v. *BATFE*,
140 F.4th 568 (4th Cir. 2025) ..........................................................................................7

*McDonald* v. *City of Chicago*,
561 U.S. 742 (2010)..........................................................................................................1

*Md. Shall Issue* v. *Hogan*,
353 F. Supp. 3d 400 (D. Md. 2018)..................................................................................2

*Miller* v. *Alabama*,
567 U.S. 460 (2012)..........................................................................................................17

*Mitchell* v. *Atkins,*
    483 F. Supp. 3d 985 (W.D. Wash. 2020)......................................................1

*Nat'l Ass'n for Gun Rts.* v. *City of San Jose,*
    2023 WL 4552284 (N.D. Cal. July 13, 2023)..............................................2

*Nat'l Ass'n for Gun Rts.* v. *Lamont,*
    685 F. Supp. 3d 63 (D. Conn. 2023)............................................................2

*Nat'l Rifle Ass'n* v. *Bondi,*
    133 F.4th 1108 (11th Cir. 2025) ........................................................ *passim*

*N.Y. State Rifle & Pistol Ass'n* v. *Bruen,*
    597 U.S. 1 (2022) ............................................................................... *passim*

*Peruta* v. *County of San Diego,*
    824 F.3d 919 (9th Cir. 2016) ......................................................................2

*Stimmel* v. *Sessions,*
    879 F.3d 198 (6th Cir. 2018) ......................................................................2

*United States* v. *Hayes,*
    555 U.S. 415 (2009).....................................................................................2

*United States* v. *Rahimi,*
    602 U.S. 680 (2024)........................................................................... *passim*

*United States* v. *Rene E,*
    583 F.3d 8 (1st Cir. 2009).................................................................5, 7, 8

**Constitution, Statutes, and Rules**

U.S. CONST. amend. II ........................................................................... *passim*

U.S. CONST. amend. XXVI .................................................................................3

21 U.S.C. § 387f ................................................................................................3

23 U.S.C. § 158 .................................................................................................3

Mass. Gen. Laws ch. 10, § 29 ...........................................................................3

Mass. Gen. Laws ch. 138, § 34 .........................................................................3

Mass. Gen. Laws ch. 140, § 129B .....................................................................3

Mass. Gen. Laws ch. 140, § 129C .....................................................................3

Mass. Gen. Laws ch. 140, § 131 .......................................................................3

Mass. Gen. Laws ch. 269, § 10 ..............................................................................3

Mass. Gen. Laws ch. 270, § 6 ................................................................................3

**Other Authorities**

193d Gen. Ct., Formal House Session No. 93 (Mass. Oct. 18, 2023) ............................4

194th Gen. Ct. Commonwealth Mass., Bill H.4885, *An Act Modernizing Firearms Laws* ....................................................................................................................3

194th Gen. Ct., Formal House Session No. 69 (Mass. July 19, 2024) .......................3, 4

*A Partial List of Mass Shootings in the United States in 2022*, N.Y. TIMES (Jan. 24, 2023)............................................................................................................13

Adam Winkler & Cara Natterson, *There's a Simple Way to Reduce Gun Violence: Raise the Gun Age*, WASH. POST (Jan. 6, 2016)........................................................16

*AMA Calls Gun Violence "a Public Health Crisis,"* AMA (June 14, 2016) .................15

Bart Jansen, *Florida Shooting Suspect Bought Gun Legally, Authorities Say*, USA TODAY (Feb. 15, 2018) ........................................................................................19

*Columbine High School Shootings Fast Facts*, CNN (Apr. 1, 2025)............................14

Daniel W. Webster et al., *Association Between Youth-Focused Firearm Laws and Youth Suicides*, 292 JAMA 594 (2004) ...................................................................18

E. Michael Lewiecki & Sara A. Miller, *Suicide, Guns, and Public Policy*, 103 AM. J. PUB. HEALTH 27 (2013) ...............................................................................9

Eberhard A. Deisenhammer et al., *The Duration of the Suicidal Process: How Much Time Is Left for Intervention Between Consideration and Accomplishment of a Suicide Attempt?*, 70 J. CLINICAL PSYCHIATRY 19 (2009) ...................10

Elise Hammond, Tori B. Powell & Aya Elamroussi, *The Latest on Mass Shooting in Farmington, New Mexico*, CNN (May 17, 2023) ...............................................13

*Firearm Suicide in the United States*, Johns Hopkins Bloomberg Sch. of Pub. Health (last visited Nov. 18, 2025) ........................................................................10

Glenn Thrush & Matt Richtel, *A Disturbing New Pattern in Mass Shootings: Young Assailants,* N.Y. TIMES (June 2, 2022) .........................................................19

Isabel Rosales, Holly Yan & Elizabeth Wolfe, *6 People Face Murder Charges for the Sweet 16 Party Massacre That Left 4 Dead and 32 Injured*, CNN (Apr. 21, 2023)..........................................................................................................................12

J. Michael Bostwick et al., *Suicide Attempt as a Risk Factor for Completed Suicide: Even More Lethal Than We Knew*, 173 AM. J. PSYCHIATRY 1094 (2016) ................................................................................................11

James Barron, *Nation Reels After Gunman Massacres 20 Children at School in Connecticut*, N.Y. TIMES (Dec. 15, 2012) ...............................................14

James Silver, Andre Simons & Sarah Craun, Fed. Bureau of Investigation, U.S. Dep't of Just., *A Study of the Pre-Attack Behaviors of Active Shooters in the United States Between 2000 and 2013* (2018) ........................................19

Jane E. Brody, *After a Suicide Attempt, the Risk of Another Try*, N.Y. TIMES (Nov. 7, 2016) ................................................................................................11

Jason Hanna et al., *Alleged Shooter at Texas High School Spared People He Liked, Court Document Says*, CNN (May 19, 2018) ...............................14

Jay N. Giedd, Matcheri Keshavan & Tomáš Paus, *Why Do Many Psychiatric Disorders Emerge During Adolescence?*, 9 NATURE REVS. NEUROSCIENCE 947 (2008) ..........................................................................................9

Jenna Fisher et al., *Teen and Woman Killed in Shooting at St. Louis High School*, N.Y. TIMES (Oct. 24, 2022) ......................................................................13

Jennifer Mascia & Olga Pierce, *Youth Gun Suicide is Rising, Particularly Among Children of Color*, THE TRACE (Feb. 24, 2022) ................................10

Katherine A. Vittes, Jon S. Vernick & Daniel W. Webster, *Legal Status and Source of Offenders' Firearms in States with the Least Stringent Criteria for Gun Ownership*, 19 INJ. PREVENTION 26 (2013) .......................................19

Katherine S. Newman et al., *Rampage: The Social Roots of School Shootings* (2004) ........................................................................................................6

*Leading Causes of Death Reports, 2018 to 2023*, Ctrs. for Disease Control & Prevention, Web-Based Injury Statistics Query & Reporting System (WISQARS) (last visited Nov. 18, 2025) ....................................................10

Leah H. Somerville, Rebecca M. Jones & BJ Casey, *A Time of Change: Behavioral and Neural Correlates of Adolescent Sensitivity to Appetitive and Aversive Environmental Cues*, 72 BRAIN & COGNITION 124 (2010) .......17

Lexi Lonas Cochran, *US School Shootings Reach New High, Doubled in Past Year*, THE HILL (Sep. 14, 2023) ..........................................................14, 15

Mariam Arain et al., *Maturation of the Adolescent Brain*, 9 NEUROPSYCHIATRIC DISEASE & TREATMENT 449 (2013) ...................16, 17

Mark Abadi et al., *The 30 Deadliest Mass Shootings in Modern US History Include Monterey Park and Uvalde*, BUS. INSIDER (Jan. 23, 2023).....................................13, 14

Matthew Miller & David Hemenway, *Firearm Prevalence and the Risk of Suicide: A Review*, 2 HARV. HEALTH POL'Y REV. 29 (Fall 2001) ..........................................11

Matthew Miller & David Hemenway, *Guns and Suicide in the United States*, 359 NEW ENGL. J. MED. 989 (2008) ...................................................................................10

Matthew Miller et al., *Suicide Mortality in the United States: The Importance of Attending to Method in Understanding Population-Level Disparities in the Burden of Suicide*, 33 ANN. REV. PUB. HEALTH 393 (2012).....................................................11

Maya Rossin-Slater et al., *Local Exposure to School Shootings and Youth Antidepressant Use*, 117 PNAS 23484 (2020)..........................................................................15

Megan Walsh & Saul Cornell, *Age Restrictions and the Right to Keep and Bear Arms, 1791-1868*, 108 MINN. L. REV. 3049 (2024) ......................................................8

Merete Nordentoft, Preben Bo Mortensen & Carsten Bøcker Pedersen, *Absolute Risk of Suicide After First Hospital Contact in Mental Disorder*, 68 ARCHIVES GEN. PSYCHIATRY 1058 (2011)............................................................................................9

Michael Dreyfuss et al., *Teens Impulsively React Rather Than Retreat from Threat*, 36 DEVELOPMENTAL NEUROSCIENCE 220 (2014) .......................................17

Monika K. Goyal et al., *State Gun Laws and Pediatric Firearm-Related Mortality*, 144 PEDIATRICS 2 (2019) ............................................................................18

Nirmita Panchal & Sasha Zitter, *The Impact of Gun Violence on Children and Adolescents*, KFF (May 27, 2025) ..................................................................................6

Patricia Mazzei, Andrew Pantazi & Kate Selig, *What We Know About the Florida State University Shooting*, N.Y. TIMES (Apr. 20, 2025) ..........................................12

*Reducing Suicides by Firearms*, Am. Pub. Health Ass'n (Nov. 12, 2018)....................................10

Rosanna Smart et al., RAND Corp., *The Science of Gun Policy: A Critical Synthesis of Research Evidence on the Effects of Gun Policies in the United States* (4th ed. 2024) ...........................................................................................11, 18

Rose Kim et al., Johns Hopkins Bloomberg Sch. of Pub. Health, *Gun Violence in the United States 2023: Examining the Gun Suicide Epidemic* (2025) ...................................6

Sarah Rankin & Denise Lavoie, *Victims Identified in Deadly Shooting After High School Graduation Ceremony in Virginia*, KGW8 (June 7, 2023)..........................................13

Sharifa Jackson & Corey Davis, *2 Arrested, 2 More Wanted in Connection with Mass Shooting at SEPTA Bus Stop That Injured 8 Teens*, 6ABC NEWS (Mar. 11, 2024) ...................................................................................................................12

Sriraman Madhavan et al., *Firearm Legislation Stringency and Firearm-Related Fatalities Among Children in the US*, 229 J. AM. COLL. SURGEONS 150 (2019) ...................19

*Suspect Arrested in Fatal Shooting of 17-Year-Old at Lynn Market Basket*, Off. of the Dist. Att'y Essex Dist. (July 23, 2024) ..............................................................4

Thomas R. Simon et al., *Characteristics of Impulsive Suicide Attempts and Attempters*, 32 SUICIDE & LIFE-THREATENING BEHAV. 49 (Supp. 2001) ..................................9

U.S. Dep't of Health & Human Servs., *U.S. Surgeon General Issues Advisory on the Public Health Crisis of Firearm Violence in the United States* (June 25, 2024) .......................................................................................................................15

William DeJong & Jason Blanchette, *Case Closed:  Research Evidence on the Positive Public Health Impact of the Age 21 Minimum Legal Drinking Age in the United States*, 17 J. STUD. ON ALCOHOL & DRUGS 108 (Supp. 2014).............................20

Zach Schonfeld, *School Shootings at Highest Number in 20 Years:  Research*, THE HILL (June 28, 2022) ............................................................................................14

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Giffords Law Center to Prevent Gun Violence ("Giffords Law Center") is a non-profit policy organization serving lawmakers, advocates, legal professionals, gun violence survivors, and others who seek to reduce gun violence and improve the safety of their communities.[2]  The organization was founded more than thirty years ago following a gun massacre at a San Francisco law firm and was renamed Giffords Law Center in 2017 after joining forces with the gun-safety organization led by former Congresswoman Gabrielle Giffords.  Today, through partnerships with gun violence researchers, public health experts, and community organizations, Giffords Law Center researches, drafts, and defends the laws, policies, and programs proven to effectively reduce gun violence.  Together with its partner organization Giffords, Giffords Law Center also advocates for the interests of gun owners and law enforcement officials who understand that Second Amendment rights are consistent with gun-safety legislation and community violence prevention strategies.

Giffords Law Center has contributed technical expertise and informed analysis as an *amicus* in numerous cases involving firearm regulations and constitutional principles affecting gun policy.  *See, e.g.*, *District of Columbia* v. *Heller*, 554 U.S. 570 (2008); *McDonald* v. *City of Chicago*, 561 U.S. 742 (2010); *Lara* v. *Evanchick*, 534 F. Supp. 3d 478 (W.D. Pa. 2021); *Mitchell* v. *Atkins*, 483 F. Supp. 3d 985 (W.D. Wash. 2020); *Capen* v. *Campbell*, 708 F. Supp. 3d

---

[1]    *Amici* affirm that no counsel for a party authored this brief in whole or in part; no such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief; and no person other than *amici*, their members, or their counsel made such a monetary contribution.

[2]    Giffords Law Center's website, www.giffords.org/lawcenter, is the premier clearinghouse for comprehensive information about federal, state, and local firearms laws and Second Amendment litigation nationwide.

65 (D. Mass. 2023); *Granata* v. *Campbell*, 2025 WL 2495956 (D. Mass. Aug. 29, 2025). Multiple courts have cited research and information from Giffords Law Center's *amicus* briefs in Second Amendment rulings. *See, e.g.*, *Ass'n of N.J. Rifle & Pistol Clubs* v. *Att'y Gen. N.J.*, 910 F.3d 106, 121-22 (3d Cir. 2018); *Hirschfeld* v. *BATFE*, 417 F. Supp. 3d 747, 754, 759 (W.D. Va. 2019); *Md. Shall Issue* v. *Hogan*, 353 F. Supp. 3d 400, 403-05 (D. Md. 2018); *Stimmel* v. *Sessions*, 879 F.3d 198, 204, 208, 210 (6th Cir. 2018); *Peruta* v. *County of San Diego*, 824 F.3d 919, 943 (9th Cir. 2016) (en banc) (Graber, J., concurring).[3]

      *Amicus curiae* Brady Center to Prevent Gun Violence ("Brady") is the nation's most longstanding non-partisan, non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Brady has a substantial interest in ensuring that the Constitution is construed to protect Americans' fundamental right to live. Brady also has a substantial interest in protecting the authority of democratically elected officials to address the nation's gun violence epidemic.

      Brady has filed *amicus* briefs in many cases involving the regulation of firearms. *See, e.g.*, *United States* v. *Rahimi*, 602 U.S. 680 (2024). Multiple decisions have cited Brady's research and expertise on these issues. *See, e.g.*, *United States* v. *Hayes*, 555 U.S. 415, 426-27 (2009); *Nat'l Ass'n for Gun Rts.* v. *Lamont*, 685 F. Supp. 3d 63, 110 & n.52 (D. Conn. 2023); *Nat'l Ass'n for Gun Rts.* v. *City of San Jose*, 2023 WL 4552284, at *5-6 (N.D. Cal. July 13, 2023); *Hanson* v. *District of Columbia*, 671 F. Supp. 3d 1, 14-15 & n.8, 19-20 & n.10, 23 (D.D.C. 2023).

---

[3]    Giffords Law Center filed the last two briefs under its former name, the Law Center to Prevent Gun Violence.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

When people turn 18, they obtain access to certain privileges that were previously unavailable to them—for example, they can cast a ballot in a federal election or purchase a lottery ticket.[4] At the same time, other privileges remain unavailable, such as buying a beer or a pack of cigarettes.[5] States make these age-based distinctions for good reason: although 18-year-olds may be more mature than they were when they entered high school, scientific research reveals that their brains are still very much developing. Their prefrontal cortices—the part of the brain that governs impulsivity and emotional regulation—have not yet fully matured. Such modern research validates what common sense has reflected for many years: 18-to-20-year-olds are more prone to risk-taking, to impulsive behavior, and to deprioritizing long-term outcomes.

The Massachusetts Legislature recognized this when it passed House Bill 4885 ("H.B. 4885"), which, among other reforms, amended various firearm laws to raise to 21 the minimum age for purchasing and possessing handguns and semiautomatic long guns, with certain exceptions.[6] *See* Mass. Gen. Laws ch. 140, §§ 129B(a), (c), 129C, 131(d); Mass Gen. Laws ch. 269, § 10(a), (h) (the "Massachusetts Laws"). It did so to address the special danger that 18-to-20-year-olds pose as a result of their proclivity towards risk-taking and impulsive behavior. In passing H.B. 4885, lawmakers considered various Massachusetts shootings involving youth victims and 18-to-20-year-old shooters.[7] Additionally, legislators in support of amending the

---

[4]    *See* U.S. CONST. amend. XXVI; Mass. Gen. Laws ch. 10, § 29.

[5]    *See* 23 U.S.C. § 158; Mass. Gen. Laws ch. 138, § 34; 21 U.S.C. § 387f(d)(5); Mass. Gen. Laws ch. 270, § 6.

[6]    194th Gen. Ct. Commonwealth Mass., Bill H.4885, *An Act Modernizing Firearms Laws*, https://malegislature.gov/Bills/193/H4885/BillHistory (last visited Nov. 18, 2025).

[7]    *See, e.g.*, 194th Gen. Ct., Formal House Session No. 69, at 21:17 (Mass. July 18, 2024) (statement of Rep. Michael S. Day) (remarking on the 2024 shooting of a 17-year-old); *Suspect*

Massachusetts Laws referenced a number of high-profile school shootings perpetrated by 18-to-20-year-old shooters,[8] as well as concerns over youth suicide rates.[9]

Plaintiffs now challenge the constitutionality of these laws. Yet, as Defendants have established, the Massachusetts Laws are fully consistent with the Second Amendment. While the Second Amendment protects the right of "law-abiding" adults to keep and bear arms, *District of Columbia* v. *Heller*, 554 U.S. 570, 635 (2008), it coexists with the longstanding authority of federal and state governments to lawfully regulate firearm purchase, possession, and use, including by restricting certain categories of people from purchasing or possessing firearms. This is the exact authority that the Massachusetts Legislature exercised when it passed H.B. 4885.

In *New York State Rifle & Pistol Association, Inc.* v. *Bruen*, the Supreme Court adopted a two-step approach to evaluating Second Amendment claims. 597 U.S. 1, 17 (2022). First, the challenger must show that the relevant regulations implicate the plain text of the Second Amendment. *Id.*; *see also Granata* v. *Campbell*, 2025 WL 2495956, at *8 (D. Mass. Aug. 29, 2025) (upholding Massachusetts' handgun roster because the law did not implicate the plain text of the Second Amendment). Then—if and only if the challenger makes this showing—

---

*Arrested in Fatal Shooting of 17-Year-Old at Lynn Market Basket*, Off. of the Dist. Att'y Essex Dist., https://www.essexcountyda.com/news/suspect-arrested-in-fatal-shooting-of-17-year-old-at-lynn-market-basket (July 23, 2024) (noting the connected arrest of an 18-year-old accused shooter); 193d Gen. Ct., Formal House Session No. 93, at 41:48 (Mass. Oct. 18, 2023) (statement of Rep. Day) (listing shootings and victims in support of H.B. 4885's predecessor bill), https://malegislature.gov/Events/Sessions/Detail/4504.

[8] *See* 194th Gen. Ct., Formal House Session No. 69, *supra* note 7, at 20:00 (statement of Rep. Day); *see also* 193d Gen. Ct., Formal House Session No. 93, *supra* note 7, at 2:16:40 (statement of Rep. Steven Owens) (remarking on school shootings in Sandy Hook, Parkland, and Uvalde in support of H.B. 4885's predecessor bill); *see also infra* Section II.B.

[9] *See* 193d Gen. Ct., Formal House Session No. 93, *supra* note 7, at 59:37 (statement of Rep. Carlos Gonzalez) (noting while considering H.B. 4885's predecessor bill that "the children . . . are falling victim to . . . suicide").

the court moves to the second step and determines whether the challenged regulation is consistent with historical tradition. *Bruen*, 597 U.S. at 17. Under *Bruen*'s second step, there is no requirement that courts find the challenged regulation is "a dead ringer for historical precursors." *Id.* at 30. Rather, the government must merely identify a "well-established and representative historical *analogue*, not a historical *twin*." *Id.* (emphasis in original); *Capen* v. *Campbell*, 134 F.4th 660, 673 (1st Cir. 2025) (same).

       In *United States* v. *Rahimi*, the Supreme Court further clarified the standard articulated in *Bruen*, explaining that at the second step, "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." 602 U.S. 680, 692 (2024) (emphasis added). In conducting that analysis, courts "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id.* (quoting *Bruen*, 597 U.S. at 29). "Why and how the regulation burdens the right are central to this inquiry." *Id.*

       This Court should grant Defendants' motions for summary judgment (ECF Nos. 39, 53), because the Massachusetts Laws are consistent with our nation's historical tradition of regulating firearms, including the tradition of regulating firearm access by "categories of persons thought by a legislature to present a special danger of misuse." *Id.* at 698; *see also United States* v. *Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009) (upholding federal minimum age law and recognizing the "longstanding tradition of prohibiting juveniles from both receiving and possessing handguns"), *cert. denied*, 558 U.S. 1133 (2010). *Amici* submit this brief to provide additional evidence demonstrating that the Massachusetts Laws follow the principles underpinning our nation's historical firearm regulations (including regulations of individuals in the 18-to-20-year-old age

group), and to highlight an established and robust body of empirical research confirming that the Massachusetts Laws are analogous to historical regulations.

Modern social science research demonstrates that 18-to-20-year-olds are at a heightened risk of suicide, and are disproportionately involved in gun violence, including mass shootings. Such impulsive acts are a major part of why gun violence is now the leading cause of death among children and adolescents in America.[10] Notably, access to firearms can determine whether a young person contemplating suicide or a mass shooting is able to carry out the act.[11] This grim reality underscores why regulating this age group's access to firearms is consistent with the principles underlying historical firearm regulations and thus comports with the Second Amendment.

## ARGUMENT

**I.    THE MASSACHUSETTS LAWS ARE CONSISTENT WITH THE HISTORICAL PRINCIPLE OF REGULATING GROUPS THAT POSE A HEIGHTENED RISK OF FIREARM VIOLENCE.**

In *Rahimi*, the Supreme Court issued a critical clarification of how courts must analyze Second Amendment challenges. The Court rejected the overly narrow interpretation of *Bruen* that some lower courts had mistakenly applied, which focused too strictly on matching any challenged modern law to a specific historical law. As the Court explained, "the Second

---

[10]    *See* Rose Kim et al., Johns Hopkins Bloomberg Sch. of Pub. Health, *Gun Violence in the United States 2023: Examining the Gun Suicide Epidemic* 1 (2025), https://publichealth.jhu.edu/ sites/default/files/2025-06/2023-cgvs-gun-violence-in-the-united-states.pdf; *see also* Nirmita Panchal & Sasha Zitter, *The Impact of Gun Violence on Children and Adolescents*, KFF (May 27, 2025), https://www.kff.org/mentalhealth/the-impact-of-gun-violence-on-children-and-adolescents/.

[11]    *See infra* Section II.A; *see also* Katherine S. Newman et al., *Rampage: The Social Roots of School Shootings* 259-61, 270 (2004) (identifying access to guns as a necessary condition for mass school shootings).

Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 602 U.S. at 691-92; *see id.* at 691 (*Heller* and *Bruen* "were not meant to suggest a law trapped in amber"). "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with *the principles* that underpin our regulatory tradition." *Id.* at 692 (emphasis added). Critically, "[w]hy and how the regulation burdens the right are central to this inquiry. . . . [I]f laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.*

The Massachusetts Laws comport with the historical tradition of age-based laws in this country, as well as the historical tradition of regulating persons (including 18-to-20-year-olds) who are deemed to pose a heightened risk of harm when armed. As both the Fourth and Eleventh Circuits recently concluded, age-based restrictions on firearms are relevantly similar to historical laws setting the age of majority at 21. *See McCoy* v. *BATFE*, 140 F.4th 568, 575 (4th Cir. 2025), *petition for cert. filed*, No. 25-24 (U.S. July 3, 2025); *Nat'l Rifle Ass'n* v. *Bondi*, 133 F.4th 1108, 1117-23, 1130 (11th Cir. 2025) (en banc), *petition for cert. filed*, No. 24-1185 (U.S. May 16, 2025). The historical record establishes that during the Founding era, those under 21 were viewed as lacking "the reason and judgment necessary to be trusted with legal rights." *Bondi*, 133 F.4th at 1117 (compiling sources). Indeed, the First Circuit likewise found that the federal minimum age law for purchasing handguns did not violate the Second Amendment because the law was consistent with historical laws that "regulat[ed] juvenile access to handguns on the ground that their possession can pose a serious threat to public safety." *Rene E.*, 483 F.3d at 16.[12]

---

[12]    In *Rene E.*, the First Circuit did not apply means-end scrutiny to uphold the federal law. Instead, the court found that the law was consistent with historical tradition, relying on a range of historical sources, including "the Founders' attitudes" toward the Second Amendment and "state

As discussed further in Section II *infra*, those under the age of 21 are more impulsive and disproportionately prone to engage in gun violence when compared to other age groups. Thus, as respected commentators have explained, historical and modern laws like the Massachusetts Laws "have the same 'why': concerns about public safety resulting from minors' impulsivity and their improper usage of firearms." Megan Walsh & Saul Cornell, *Age Restrictions and the Right to Keep and Bear Arms*, *1791-1868*, 108 MINN. L. REV. 3049, 3108 (2024). Because the Massachusetts Laws impose "similar restrictions for similar reasons" as historical regulations—namely, restricting access to firearms for 18-to-20-year-olds to prevent impulsive acts of gun violence disproportionately carried out by this age group—they pass constitutional muster. *Rahimi*, 602 U.S. at 692.

## II.    MODERN SOCIAL SCIENCE AND NEUROSCIENCE CONFIRM WHAT LEGISLATORS HAVE LONG RECOGNIZED: THAT 18-TO-20-YEAR-OLDS POSE A HEIGHTENED RISK OF FIREARM VIOLENCE.

Empirical evidence shows that 18-to-20-year-olds are at a heightened risk of violence when they have access to firearms, and that increasing the minimum age required to access a firearm will save a substantial number of lives. As a result of this simple legislative act, many youths who would be dead far before their time will instead survive a highly dangerous period in their lives. The Massachusetts Laws' temporally limited restriction on access to firearms by individuals in this age group is thus entirely consistent with the historical principle of protecting the public from persons who pose a heightened risk of violence when armed. *See Bondi*, 133 F.4th at 1117-23; *id.* at 1150-53 (Rosenbaum, J., concurring) (discussing modern social science research that supports limiting firearm access for 18-to-20-year-olds).

---

laws of the nineteenth century." 483 F.3d at 13-16. *Rene E.* thus comports with the *Bruen* test's text-and-history approach to Second Amendment claims.

A.      **18-to-20-Year-Olds Attempt Suicide at Disproportionately High Rates, and Access to Firearms Increases the Likelihood and Lethality of Those Suicide Attempts.**

The 18-to-20 age group is at disproportionate risk of suicidal ideation and death by suicide, and unrestricted access to firearms significantly exacerbates this danger.  Many major psychiatric conditions first develop in adolescence,[13] and "suicide risk increase[s] steeply during the first few years after [an individual's] first contact with psychiatric services."[14]

The impulsivity and propensity toward negative emotional states of 18-to-20-year-olds, discussed further in Section II.C *infra*, compound the likelihood that they will die by suicide, which "is commonly an impulsive act by a vulnerable individual."[15]  One study found that, of 153 survivors of nearly lethal suicide attempts aged 13 to 34, close to 25% reported that *less than five minutes* passed between their decision to attempt suicide and the suicide attempt.[16]  In another study, nearly half of people who were referred to a psychiatric hospital following a suicide attempt stated that ten minutes or less had passed between when they first began contemplating the act and the attempt.[17]

---

[13]     Jay N. Giedd, Matcheri Keshavan & Tomáš Paus, *Why Do Many Psychiatric Disorders Emerge During Adolescence?*, 9 NATURE REVS. NEUROSCIENCE 947, 952 (2008).

[14]     Merete Nordentoft, Preben Bo Mortensen & Carsten Bøcker Pedersen, *Absolute Risk of Suicide After First Hospital Contact in Mental Disorder*, 68 ARCHIVES GEN. PSYCHIATRY 1058, 1061 (2011).

[15]     E. Michael Lewiecki & Sara A. Miller, *Suicide, Guns, and Public Policy*, 103 AM. J. PUB. HEALTH 27, 27 (2013).

[16]     Thomas R. Simon et al., *Characteristics of Impulsive Suicide Attempts and Attempters*, 32 SUICIDE & LIFE-THREATENING BEHAV. 49, 50-52 (Supp. 2001).

[17]     Eberhard A. Deisenhammer et al., *The Duration of the Suicidal Process:  How Much Time Is Left for Intervention Between Consideration and Accomplishment of a Suicide Attempt?*, 70 J. CLINICAL PSYCHIATRY 19, 20 (2009).

It is unsurprising, then, that suicide accounts for a higher percentage of deaths for 15-to-24-year-olds than for older age groups.[18]  From 2018 to 2023, suicide was the third most common cause of death among 18-to-20-year-olds.[19]  Furthermore, the upward trend in gun suicides among young people during this time has been especially acute with respect to youth of color:  between 2011 and 2020, the firearm suicide rate rose 35% among white teens,[20] while rising 88% among Native American teens and *more than doubling* among Black, Latino, and Asian teens in the same timeframe.[21]

Given the rapidity with which suicidal ideation gives way to fatal action, "[a]ccess to firearms is a key risk factor for suicide."[22]  In fact, "at least a dozen U.S. case-control studies in the peer-reviewed literature . . . have found that a gun in the home is associated with an increased risk of suicide.  The increase in risk is large, typically [two] to [ten] times that in homes without guns."[23]  Those prone to "act impulsively . . . are more likely to be affected by availability of the

---

[18]   *Leading Causes of Death Reports, 2018 to 2023*, Ctrs. for Disease Control & Prevention, Web-Based Injury Statistics Query & Reporting System (WISQARS), https://wisqars.cdc.gov/lcd (last visited Nov. 18, 2025).

[19]   *Id.*

[20]   Jennifer Mascia & Olga Pierce, *Youth Gun Suicide Is Rising, Particularly Among Children of Color*, THE TRACE (Feb. 24, 2022), https://www.thetrace.org/2022/02/firearm-suicide-rate-cdc-data-teen-mental-health-research/.

[21]   *Id.*

[22]   *Reducing Suicides by Firearms*, Am. Pub. Health Ass'n (Nov. 12, 2018), https://www.apha.org/policy-and-advocacy/public-health-policy-briefs/policy-database/2019/01/28/reducing-suicides-by-firearms.

[23]   Matthew Miller & David Hemenway, *Guns and Suicide in the United States*, 359 NEW ENGL. J. MED. 989, 990 (2008); *see Firearm Suicide in the United States*, Johns Hopkins Bloomberg Sch. of Pub. Health, https://publichealth.jhu.edu/center-for-gun-violence-solutions/firearm-suicide (last visited Nov. 18, 2025).

means at hand," which explains why "the preponderance of current evidence indicates that gun availability is a risk factor for suicide, especially among youth."[24]

The inherent lethality of firearms compounds the increased risk of suicide posed by firearm access. Firearm suicide is the suicide method with the highest fatality rate. The odds of dying by suicide are *140 times greater* when a gun is used as opposed to any other common method.[25] In other words, while 4% of non-firearm suicide attempts are fatal, 85% of suicide attempts with a gun are fatal—a highly troubling statistic.[26] In 2021, more than half of the 2,735 suicide deaths among 16-to-20-year-olds involved firearms.[27]

Restricting 18-to-20-year-olds' access to firearms indisputably saves lives. Research shows that fewer than 3% of people who survive one suicide attempt later die by suicide.[28] Although "[s]uicide attempters often have second thoughts, . . . when a method like a gun works so effectively, there's no opportunity to reconsider."[29] A young person's access to firearms when contemplating suicide therefore largely determines whether they will live or die.

---

[24] Matthew Miller & David Hemenway, *Firearm Prevalence and the Risk of Suicide: A Review*, 2 HARV. HEALTH POL'Y REV. 29, 34 (Fall 2001).

[25] J. Michael Bostwick et al., *Suicide Attempt as a Risk Factor for Completed Suicide: Even More Lethal Than We Knew*, 173 AM. J. PSYCHIATRY 1094, 1098 (2016).

[26] Matthew Miller et al., *Suicide Mortality in the United States: The Importance of Attending to Method in Understanding Population-Level Disparities in the Burden of Suicide*, 33 ANN. REV. PUB. HEALTH 393, 397 (2012).

[27] Rosanna Smart et al., RAND Corp., *The Science of Gun Policy: A Critical Synthesis of Research Evidence on the Effects of Gun Policies in the United States* 62 (4th ed. 2024), https://www.rand.org/pubs/research_reports/RRA243-9.html.

[28] Bostwick et al., *supra* note 25, at 1098.

[29] Jane E. Brody, *After a Suicide Attempt, the Risk of Another Try*, N.Y. TIMES (Nov. 7, 2016), https://www.nytimes.com/2016/11/08/well/live/after-a-suicide-attempt-the-risk-of-another-try.html.

**B.    18-to-20-Year-Olds Are Increasingly the Perpetrators of Mass Shootings.**

When young people are given unrestricted access to firearms, the consequences are too often deadly.  Indeed, our nation has faced a disturbing and continuous wave of mass shootings over the past few years, many involving perpetrators in the age range governed by the Massachusetts Laws.  *See Bondi*, 133 F.4th at 1152 & n.11 (Rosenbaum, J., concurring) ("[T]hose under the age of 21 are responsible for some of the most deadly mass shootings in United States history.").  It is entirely consistent with the Second Amendment for states to pass laws combatting the serious and unprecedented threats to public safety posed by this age group.

For example, earlier this year, a 20-year-old was arrested as the accused gunman in the April 17, 2025 mass shooting at Florida State University that left two dead and six injured.[30]  Just last year, two 18-year-olds were arrested for their involvement in a mass shooting at a bus stop in Philadelphia that left eight teenagers injured.[31]  And the year before that, in April 2023, a 19-year-old and two 20-year-olds were charged in a mass shooting at a Sweet 16 birthday party in Dadeville, Alabama that killed four people and injured 32 others, many of them high school students;[32] in May, an 18-year-old gunman in Farmington, New Mexico used a firearm purchased

---

[30]    Patricia Mazzei, Andrew Pantazi & Kate Selig, *What We Know About the Florida State University Shooting*, N.Y. TIMES (Apr. 20, 2025), https://www.nytimes.com/2025/04/17/us/florida-state-university-shooting-explainer.html.

[31]    Sharifa Jackson & Corey Davis, *2 Arrested, 2 More Wanted in Connection with Mass Shooting at SEPTA Bus Stop That Injured 8 Teens*, 6ABC NEWS (Mar. 11, 2024), https://6abc.com/northeast-high-school-septa-bus-stop-shooting-philadelphia/14514093/.

[32]    Isabel Rosales, Holly Yan & Elizabeth Wolfe, *6 People Face Murder Charges for the Sweet 16 Party Massacre That Left 4 Dead and 32 Injured*, CNN (Apr. 21, 2023), https://www.cnn.com/2023/04/19/us/dadeville-alabama-birthday-party-shooting-wednesday/index.html.

shortly after his 18th birthday to kill three people and wound six others;[33] and in June, a 19-year-old killed two and injured five others with a handgun outside a high school graduation in Richmond, Virginia.[34]

Continuing this troubling pattern, 2022 was riddled with many of its own tragedies involving young perpetrators with firearms. On May 14, 2022, an 18-year-old gunman killed ten people and wounded three others at a supermarket in Buffalo, New York;[35] ten days later, on May 24, an 18-year-old killed 19 children and two teachers at an elementary school in Uvalde, Texas;[36] and on October 24, 2022, a 19-year-old killed two people and wounded seven others at his former high school in St. Louis, Missouri.[37]

Some of the deadliest school shootings in our nation's history have been committed by young people under 21,[38] including: the May 18, 2018 shooting at Santa Fe High School in

---

[33]    Elise Hammond, Tori B. Powell & Aya Elamroussi, *The Latest on Mass Shooting in Farmington, New Mexico*, CNN (May 17, 2023), https://www.cnn.com/us/live-news/farmington-new-mexico-shooting-05-16-23.

[34]    Sarah Rankin & Denise Lavoie, *Victims Identified in Deadly Shooting After High School Graduation Ceremony in Virginia*, KGW8 (June 7, 2023), https://www.kgw.com/article/news/nation-world/2-dead-after-high-school-graduation-shooting/507-c72162c9-bf0e-4f68-bb7e-d999647b31f9.

[35]    *A Partial List of Mass Shootings in the United States in 2022*, N.Y. TIMES (Jan. 24, 2023), https://www.nytimes.com/article/mass-shootings-2022.html.

[36]    *Id.*

[37]    Jenna Fisher et al., *Teen and Woman Killed in Shooting at St. Louis High School*, N.Y. TIMES (Oct. 24, 2022), https://www.nytimes.com/2022/10/24/us/st-louis-high-school-shooting.html.

[38]    Mark Abadi et al., *The 30 Deadliest Mass Shootings in Modern US History Include Monterey Park and Uvalde*, BUS. INSIDER (Jan. 23, 2023), https://www.businessinsider.com/deadliest-mass-shootings-in-us-history-2017-10/.

Texas, during which a 17-year-old killed nine students and one teacher, and injured ten others;[39] the February 14, 2018 Parkland, Florida shooting at Marjory Stoneman Douglas High School in which a 19-year-old shooter killed 17 people and wounded 17 others;[40] the December 14, 2012 Newtown, Connecticut school shooting at Sandy Hook Elementary School, during which a 20-year-old killed 20 schoolchildren and six staff members;[41] and the April 20, 1999 Littleton, Colorado shooting at Columbine High School, during which an 18-year-old and a 17-year-old killed 12 fellow students and a teacher.[42]

Today, gun violence involving young people under 21 in schools is, tragically, even more commonplace than the list of high-profile mass shootings suggests. According to recent analyses, there were more than 70 school shootings annually between the 2018-19 and 2021-22 school years.[43] These shootings have only become more frequent: the 2020-21 school year set a record with 93 shootings that caused injury or death, and the 2021-22 school year nearly doubled

---

[39]    Jason Hanna et al., *Alleged Shooter at Texas High School Spared People He Liked, Court Document Says*, CNN (May 19, 2018), https://www.cnn.com/2018/05/18/us/texas-school-shooting.

[40]    *See* Abadi et al., *supra* note 38.

[41]    James Barron, *Nation Reels After Gunman Massacres 20 Children at School in Connecticut*, N.Y. TIMES (Dec. 15, 2012), https://www.nytimes.com/2012/12/15/nyregion/shooting-reported-at-connecticut-elementary-school.html.

[42]    *Columbine High School Shootings Fast Facts*, CNN (Apr. 1, 2025), https://www.cnn.com/2013/09/18/us/columbine-high-school-shootings-fast-facts.

[43]    Zach Schonfeld, *School Shootings at Highest Number in 20 Years: Research*, THE HILL (June 28, 2022), https://thehill.com/policy/national-security/3539820-school-shootings-at-highest-number-in-20-years-research/; Lexi Lonas Cochran, *US School Shootings Reach New High, Doubled in Past Year*, THE HILL (Sep. 14, 2023), https://thehill.com/homenews/education/4204651-us-school-shootings-reach-new-high-doubled-in-past-year.

that record with 188.[44]  Gun violence has become so pervasive that in June 2024, the U.S. Surgeon

General declared firearm violence a national public health crisis.[45]  The Surgeon General's report

notes that firearm violence is now the leading cause of death among children and adolescents, and

that more than half of U.S. adults or their family members have experienced a firearm-related

incident in their lives.[46]

      In addition to the victims killed or injured in school shootings, there are tragic

lasting effects on youth who experience these traumatic incidents:  one study found that in the two

years following a fatal school shooting, antidepressant use by youths aged 19 and younger in the

area increased by 21.3%,[47] a statistic that underscores the vulnerability of youth, particularly given

the risk of suicide discussed in Section II.A *supra*.

### C.    18-to-20-Year-Olds Are Generally More Impulsive Than Older Cohorts.

      The disturbing numbers described above are, to some extent, unsurprising given the

empirical research demonstrating that 18-to-20-year-olds' brains are still developing, making them

more likely to engage in risky behaviors.  Modern scientific research establishes that the brain does

---

[44]    Cochran, *supra* note 43.

[45]    U.S. Dep't of Health & Human Servs., *U.S. Surgeon General Issues Advisory on the Public Health Crisis of Firearm Violence in the United States* (June 25, 2024), https://www.hhs.gov/about/news/2024/06/25/us-surgeon-general-issues-advisory-public-health-crisis-firearm-violence-united-states.html [archived at https://files.giffords.org/wp-content/uploads/2025/03/US-Surgeon-Generals-2024-Advisory-on-Firearm-Violence.pdf]; *see AMA Calls Gun Violence "a Public Health Crisis*,*"* AMA (June 14, 2016), https://www.ama-assn.org/press-center/ama-press-releases/ama-calls-gun-violence-public-health-crisis.

[46]    U.S. Dep't of Health & Human Servs., *supra* note 45.

[47]    Maya Rossin-Slater et al., *Local Exposure to School Shootings and Youth Antidepressant Use*, 117 PNAS 23484, 23486 (2020).

not finish developing until one's mid-to-late twenties.[48]  As the Supreme Court has recognized, "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds."  *Graham* v. *Florida*, 560 U.S. 48, 68 (2010).  One of the *last* parts of the brain to mature is the prefrontal cortex, which is responsible for impulse control, judgment, and long-range planning.  *See id.* (citing Brief for American Medical Association et al. at 16-24; Brief for American Psychological Association et al. at 22-27).[49]  The prefrontal cortex matures well after the limbic system, which controls basic emotions like fear, anger, and pleasure, resulting in a period of reduced self-control in the late teens and early twenties.[50]

Accordingly, 18-to-20-year-olds are prone to taking risks and deprioritizing long-term outcomes.  *See, e.g.*, *Horsley* v. *Trame*, 808 F.3d 1126, 1133 (7th Cir. 2015) ("The evidence now is strong that the brain does not cease to mature until the early 20s in those relevant parts that govern impulsivity, judgment, planning for the future, foresight of consequences, and other characteristics that make people morally culpable." (quoting Declaration of Ruben C. Gur, Ph.D.)); *Bondi*, 133 F.4th at 1151 (Rosenbaum, J., concurring) ("[T]he biological evidence shows that 'the adolescent brain is structurally and functionally vulnerable to environmental stress' and 'risky behavior' in a way that the fully developed brain wouldn't be." (quoting Arain et al., *supra* note 49,

---

[48]    Adam Winkler & Cara Natterson, *There's a Simple Way to Reduce Gun Violence:  Raise the Gun Age*, WASH. POST (Jan. 6, 2016), https://www.washingtonpost.com/posteverything/wp/2016/01/06/there-a-simple-way-to-fight-mass-shootings-raise-the-gun-age ("The scientific literature over the past two decades has demonstrated repeatedly that the brain does not fully mature until the mid-to-late 20s.").

[49]    *See also* Mariam Arain et al., *Maturation of the Adolescent Brain*, 9 NEUROPSYCHIATRIC DISEASE & TREATMENT 449, 453, 456 (2013) ("Behavioral control requires a great involvement of cognitive and executive functions.  These functions are localized in the prefrontal cortex, which matures independent of puberty and continues to evolve up until 24 years of age.").

[50]    *See id.* at 453.

-16-

at 458)).[51]  Indeed, as the Eleventh Circuit recently described, even before our modern empirical proof, the Founders' generation understood that those under 21 years of age lacked a developed sense of reason and judgment.  *See Bondi*, 133 F.4th at 1117-18.

Adolescents also are uniquely prone to negative emotional states.[52]  Adolescent responses to "frequent" negative states "tend to be more intense, variable and subject to extremes relative to adults."[53]  And adolescents are more likely to *act* on negative emotions like stress or rage because their limbic systems have matured while their cerebral cortices (*i.e.*, impulse control centers) are still developing.[54]  Because the behavior-regulating functions of their brains are still developing, 18-to-20-year-olds are indisputably at a higher risk of perpetrating and suffering from gun violence when they have unrestricted access to firearms.[55]

### D.    Minimum-Age Laws Have Proven Effective at Reducing Gun Violence Among Minors.

Under the *Bruen* and *Rahimi* framework, courts must examine both "why" the legislature enacted the challenged law and "how" the challenged law operates.  The Massachusetts

---

[51]    *See also, e.g.*, *Miller* v. *Alabama*, 567 U.S. 460, 471 (2012) (noting that juveniles "have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking" (internal quotation marks and citation omitted)).

[52]    Leah H. Somerville, Rebecca M. Jones & BJ Casey, *A Time of Change:  Behavioral and Neural Correlates of Adolescent Sensitivity to Appetitive and Aversive Environmental Cues*, 72 BRAIN & COGNITION 124, 125 (2010).

[53]    *Id*.

[54]    *See* Arain et al., *supra* note 49, at 458 ("[T]he adolescent brain is structurally and functionally vulnerable to environmental stress . . . .").

[55]    *See, e.g.*, Michael Dreyfuss et al., *Teens Impulsively React Rather Than Retreat from Threat*, 36 DEVELOPMENTAL NEUROSCIENCE 220, 220 (2014) ("Adolescents commit more crimes per capita than children or adults in the [United States] and in nearly all industrialized cultures. Their proclivity toward . . . risk taking has been suggested to underlie the inflection in criminal activity observed during this time.").

Laws "ha[ve] the same 'why' as" historical laws setting the age of majority at 21: these laws recognize that people under 21 "lack the judgment and discretion to purchase [and possess] firearms responsibly." *Bondi*, 133 F.4th at 1122-23. Indeed, the Massachusetts Legislature's policy choice is supported by the substantial body of social science evidence establishing that age-based restrictions are effective at combatting gun violence.

Studies confirm a connection between age-based regulations like the Massachusetts Laws and a decline in firearm-related adolescent deaths—particularly those due to suicide. For instance, a 2004 study found that state laws raising the minimum legal age to purchase a handgun to 21 were associated with a 9% decline in firearm suicide rates among 18-to-20-year-olds.[56] Another comprehensive report issued just last year on the science of gun policy found "supportive evidence that increasing the minimum age required to purchase a firearm above the threshold set by federal law can reduce firearm suicides among young people."[57]

Age-based regulations also have proven effective in reducing gun violence among young people, including in the 18-to-20-year-old range. A 2019 study found that 18-to-21-year-olds made up more than two-thirds (68.7%) of the 21,241 firearm-related deaths among U.S. children and adolescents from 2011 to 2015, but that every ten-point increase in a score measuring the strength of a state's gun laws "decreases the firearm-related mortality rate in children by 4%."[58] Another study using the same gun-law scores found that the pediatric firearm mortality rate among

---

[56]    Daniel W. Webster et al., *Association Between Youth-Focused Firearm Laws and Youth Suicides*, 292 JAMA 594, 598 (2004).

[57]    Smart et al., *supra* note 27, at xiii.

[58]    Monika K. Goyal et al., *State Gun Laws and Pediatric Firearm-Related Mortality*, 144 PEDIATRICS 2, 3 & tbl. 1 (2019).

children under 20 was almost twice as high in the quartile of states with the weakest laws than in the quartile of states with the strongest laws.[59]

Notably, research demonstrates that most shooters obtain their weapons lawfully. In a report examining active shootings from 2000 to 2013, the FBI concluded that "only very small percentages [of shooters] obtain[ed] a firearm illegally,"[60] indicating that, rather than being sophisticated participants in the black market for firearms, perpetrators seek easy and lawful access to weapons. Indeed, a survey of convicted gun offenders in 13 states found that 17% of the offenders would have been prohibited from obtaining firearms at the time of the crime if the minimum legal age for purchasing a firearm in that state had been 21 years, a finding that "underscore[s] the importance of minimum-age restrictions."[61] This logic applies to mass shooters as well.[62]

---

[59]    Sriraman Madhavan et al., *Firearm Legislation Stringency and Firearm-Related Fatalities Among Children in the US*, 229 J. AM. COLL. SURGEONS 150, 152 (2019).

[60]    James Silver, Andre Simons & Sarah Craun, Fed. Bureau of Investigation, U.S. Dep't of Just., *A Study of the Pre-Attack Behaviors of Active Shooters in the United States Between 2000 and 2013*, at 7 (2018), https://www.fbi.gov/file-repository/pre-attack-behaviors-of-active-shooters-in-us-2000-2013.pdf/view.

[61]    Katherine A. Vittes, Jon S. Vernick & Daniel W. Webster, *Legal Status and Source of Offenders' Firearms in States with the Least Stringent Criteria for Gun Ownership*, 19 INJ. PREVENTION 26, 29-30 (2013).

[62]    For example, the perpetrators of the Parkland, Buffalo, and Uvalde shootings mentioned in Section II.B *supra* are just three of many 18-to-20-year-old mass shooters who legally purchased their firearms in the absence of stricter age laws. *See* Bart Jansen, *Florida Shooting Suspect Bought Gun Legally, Authorities Say*, USA TODAY (Feb. 15, 2018), https://www.usatoday.com/story/news/2018/02/15/florida-shooting-suspect-bought-gun-legally-authorities-say/340606002/; Glenn Thrush & Matt Richtel, *A Disturbing New Pattern in Mass Shootings: Young Assailants*, N.Y. TIMES (June 2, 2022), https://www.nytimes.com/2022/06/02/us/politics/mass-shootings-young-men-guns.html.

The same concerns regarding minors' heightened impulsiveness, discussed at length in Section II.C *supra*, motivated the passage of laws in all 50 states establishing 21 as the minimum legal age for alcoholic beverage purchase and consumption. Studies confirm that these laws led to significant reductions in deaths from car crashes involving minor drivers.[63]

Lawmakers therefore can and have rationally concluded that age restrictions on access to firearms will deter suicidal and criminal use of firearms—precisely the type of reasonable conclusion that is consistent with our nation's history and tradition of firearms regulations. *See Bondi*, 133 F.4th at 1122-23. The bottom line here is that nothing in the Second Amendment can legitimately be read to bar states from passing laws "to stop immature and impulsive individuals . . . from harming themselves and others with deadly weapons." *Id.* at 1130.

## CONCLUSION

For the foregoing reasons, and those set forth by Defendants, the Massachusetts Laws survive Plaintiffs' challenge to their constitutionality under *Rahimi*'s historical principles test. A temporal restriction on the ability of 18-to-20-year-olds to purchase and possess firearms (the "how") in order to protect the public from individuals who pose a heightened risk of harm when armed (the "why") is entirely consistent with a long history of analogous public safety regulations. This "why" is further confirmed by modern neuroscience and social science research on the heightened risk of death when individuals under the age of 21 have easy access to firearms. Thus, both the "how" and "why" of the Massachusetts Laws are consistent with the principles underlying historical firearm regulations. Accordingly, Defendants are entitled to summary judgment.

---

[63]    William DeJong & Jason Blanchette, *Case Closed: Research Evidence on the Positive Public Health Impact of the Age 21 Minimum Legal Drinking Age in the United States*, 17 J. STUD. ON ALCOHOL & DRUGS 108, 109 (Supp. 2014).

Dated:  November 25, 2025

William T. Clark
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
244 Madison Avenue, Ste. 147
New York, NY 10016

Leonid Traps
Madeline B. Jenks
Lisa Wang
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

Robert A. Sacks
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, CA 90067

*Of counsel for* Amicus Curiae *Giffords Law
Center to Prevent Gun Violence*

Douglas N. Letter
Shira Lauren Feldman
Tess M. Fardon
BRADY CENTER TO PREVENT
GUN VIOLENCE
840 First Street NE, Ste. 400
Washington, DC 20002

*Of counsel for* Amicus Curiae *Brady Center
to Prevent Gun Violence*

Respectfully submitted,

/s/ *Michelle C. Yau*

Michelle C. Yau
BBO No. 657236
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699
myau@cohenmilstein.com

*Counsel of Record for* Amici Curiae

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's CM/ECF system, will be sent electronically to the registered participants in this matter as identified on the Notice of Electronic Filing.

/s/ *Michelle C. Yau*
Michelle C. Yau
*Counsel for* Amici Curiae

November 25, 2025