UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10389-GAO

MARK ESCHER, GUN OWNERS' ACTION LEAGUE, COMMONWEALTH SECOND AMENDMENT, FIREARMS POLICY COALITION, INC., SECOND AMENDMENT FOUNDATION, NATIONAL RIFLE ASSOCIATION OF AMERICA, and GUN OWNERS OF AMERICA, INC.,
Plaintiffs,

v.

COLONEL GEOFFREY NOBLE, in his official capacity as Superintendent of the Massachusetts State Police and of the Commonwealth of Massachusetts, JAMIE GAGNON, in his official capacity as Commissioner of the Department of Criminal Justice Information Services, and HEATH J. ELDREDGE, in his official capacity as the Chief of Police of Brewster, Massachusetts,
Defendants.

OPINION AND ORDER
August 21, 2026

O'TOOLE, D.J.

Massachusetts law prohibits eighteen- to twenty-year-olds from lawfully purchasing, possessing, or carrying certain classes of commonly used firearms. This case presents the question whether the Commonwealth's statutory age restriction violates the Second and Fourteenth Amendments to the United States Constitution. After careful consideration of the parties' positions, the Court holds that it does not.

## I. Background

Plaintiff Mark Escher is a twenty-year-old resident of Brewster, Massachusetts, and currently holds a valid Massachusetts Firearms Identification Card ("FID card"). An FID card is available to Massachusetts citizens who, in addition to satisfying other criteria, have reached the age of eighteen. As a general matter, the holder of a valid FID card is entitled lawfully "to purchase,

transfer, possess and carry rifles and shotguns that are not large capacity or semi-automatic," as well as the ammunition therefor. Mass. Gen. Laws ch. 140, § 129B(c); see also id., § 129C(a) (setting forth certain exceptions to § 129B's scope). A person who only holds an FID card may not, however, lawfully purchase, transfer, possess, or carry a semiautomatic long gun or a handgun of any kind, semiautomatic or otherwise. See id., § 129B(a), (c) (establishing that lawful possession pursuant to FID card is limited to single-action, non-large-capacity long guns). To lawfully possess or carry most semiautomatic firearms and pistols, Massachusetts law requires a different and separate license, a License to Carry ("LTC"). Under the current statutory regime, the holder of an LTC must be at least twenty-one years old (the "statutory age restriction"), among other requirements. Id., § 131(d) (establishing age requirement for LTC).

Currently, pursuant to his FID card, Escher owns "a muzzleloading rifle and a shotgun, both of which [he] use[s] for hunting." (Decl. of M. Escher ¶ 4 (dkt. no. 46).) Escher desires to also possess semiautomatic firearms, including a handgun, which he says he would carry in public for self-defense, but he has never applied for an LTC because, under the relevant statute, his age renders him categorically ineligible to hold that license.

By the present action under 42 U.S.C. § 1983, Escher and several organizational plaintiffs—of which Escher is a member—seek to test the constitutionality of the statutory age restriction.[1] Together, the plaintiffs assert that the existing age restriction violates the Second and Fourteenth Amendments by prohibiting otherwise law-abiding eighteen- to twenty-year-old adults from possessing firearms in common use, specifically handguns and semiautomatic long guns. (See Pls.' Br. in Supp. of Mot. for Summ. J. ("Pls.' Br.") at 1 (dkt. no. 44).) To vindicate what they

[1] The organizational plaintiffs are: Gun Owners' Action League, Commonwealth Second Amendment, Firearms Policy Coalition, Inc., Second Amendment Foundation, National Rifle Association of America, and Gun Owners of America, Inc.

say is an infringement of those persons' right to keep and bear arms, which "presumptively 'belongs to all Americans,'" the plaintiffs seek declaratory and injunctive relief from the statutory age restriction.[2] (Id. (quoting District of Columbia v. Heller, 554 U.S. 570, 581 (2008).) First, the plaintiffs ask the Court for a declaratory judgment that the age restriction is unconstitutional. See 28 U.S.C. § 2201. Second, relying on Ex parte Young, 209 U.S. 123 (1908), the plaintiffs urge the Court to permanently enjoin certain Massachusetts state officials from enforcing the age restriction: Geoffrey Noble, Colonel of the Massachusetts State Police, Jamie Gagnon, Commissioner of the Department of Criminal Justice Information Services,[3] and Heath J. Eldredge, Chief of Police for the Town of Brewster, Massachusetts. See Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 327 (2015).

Before the Court are the parties' cross motions for summary judgment on the question whether the statutory age restriction violates the United States Constitution. Before reaching the merits of those motions, the Court must first address a jurisdictional challenge by Brewster Chief Eldredge which rests on two independent grounds: first, that the Eleventh Amendment bars the plaintiffs' suit and, second, that each plaintiff lacks Article III standing to bring this action. See, e.g., Whitfield v. Municipality of Fajardo, 564 F.3d 40, 44 (1st Cir. 2009) (explaining that "federal courts have an omnipresent duty to take notice of jurisdictional defects").

---

[2] The challenged laws are: "Mass. Gen. L. ch. 140, §§ 129B(a), (c), 129C(a), 131(d), and Mass. Gen. L. ch. 269, §§ 10(a), (h), and all related laws, regulations, policies, and procedures." (Compl., PRAYER, ¶ 1 (dkt. no. 1).)

[3] Among other things, the Department of Criminal Justice Information Services manages the Firearms Records Bureau, which "is the Commonwealth's repository for all firearms license and transaction data, issues non-resident firearms licenses and resident alien permits, and provides guidance to local licensing officers." https://www.mass.gov/firearms-services (last accessed August 11, 2026).

## II. Standard of Review

Summary judgment is appropriate "only if the record shows 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Salmon v. Lang, 57 F.4th 296, 308 (1st Cir. 2022) (quoting Fed. R. Civ. P. 56). A dispute is genuine "if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" Axis Ins. Co. v. Barracuda Networks, Inc., 160 F.4th 1, 8 (1st Cir. 2025) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). A fact is "material" if it "need[s] to be resolved before the related legal issues can be decided." Garside, 895 F.2d at 48 (alteration in original) (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Cross-motions for summary judgment "do not alter" this standard. Wells Real Est. Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010).

## III. *Ex Parte Young*

The Court begins with Chief Eldredge's threshold jurisdictional argument that the Eleventh Amendment bars the plaintiffs' suit. Eldredge urges that, by naming him as a defendant, the plaintiffs have impermissibly attempted to effectively include the Commonwealth of Massachusetts as a party without its consent.

The Eleventh Amendment generally bars private plaintiffs from suing a State or its departments or agencies in the federal courts. See Allen v. Cooper, 589 U.S. 248, 254 (2020). The bar applies to "suits that are nominally against state officials but where the state is 'the real, substantial party in interest' because the relief sought 'would operate against [the state].'" Cotto v. Campbell, 126 F.4th 761, 767 (1st Cir. 2025) (alteration in original) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)), cert. denied, 146 S. Ct. 1491 (2026). As is relevant here, however, this general proscription is subject to the exception announced in Ex

parte Young: that the Eleventh Amendment does not preclude aggrieved plaintiffs from seeking "prospective relief that enjoins state officials from committing future violations of federal law." Id.; see Ex parte Young, 209 U.S. at 159 ("[T]he use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity.").

Where, as here, the plaintiffs' challenge is based on "an anticipated (as opposed to an ongoing) violation of federal law," the exception permits an action "against state officials with the authority to prevent [the anticipated] violations," Cotto, 126 F.4th at 767 n.3, so long as the relief sought is "properly characterized as prospective," Doe v. Shibinette, 16 F.4th 894, 903 (1st Cir. 2021) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)). A state official has authority to prevent the anticipated violation if his official duties bear "some connection with the enforcement of the [allegedly unconstitutional] act." Cotto, 126 F.4th at 773 (alteration in original) (quoting Ex parte Young, 209 U.S. at 157). This jurisdictional question is distinct from "an analysis of the merits of the claim." Verizon Md., 535 U.S. at 646.

Eldredge contends that he is not a proper defendant under the Ex parte Young exception because: (1) he possesses only "general authority" to enforce Massachusetts law and therefore the plaintiffs cannot show a sufficient connection between Eldredge's official duties and the enforcement of the statutory age restriction, and (2) he has "no discretion" to grant Escher an LTC or otherwise "change Massachusetts law." (Mem. in Supp. of Heath Eldredge's Mot. for Summ. J. at 7 (dkt. no. 54).)

The plaintiffs, by contrast, argue that Eldredge is properly named as a defendant to this action because he "is the official responsible for ultimately granting or denying applications for licenses to carry" to Brewster residents. (Pls.' Opp'n to Defs.' Mots. for Summ. J. ("Pls.' Opp'n")

at 2 (dkt. no. 59).) They point to the statute governing the issuance of LTCs, which contemplates that "[a] lawful resident 21 years of age or older . . . may submit *to the licensing authority* an application for a license to carry firearms, or renewal of the same, *which the licensing authority shall issue*." Mass. Gen. Laws ch. 140, § 131(d) (emphasis added). Further, the plaintiffs note that the statutory definition of a "[l]icensing authority," includes "the chief of police or the board or officer having control of the police in a city or town." See id., § 121.

It is undisputed that Eldredge is the police chief of Brewster and that Escher resides in that town. Therefore, under the plain statutory language on which the plaintiffs rely Eldredge is, effectively, Brewster's "licensing authority." The plaintiffs have thus established a sufficient connection between Eldredge's official duties and the enforcement of the statutory age restriction. Accordingly, the exception under Ex parte Young applies, and the Eleventh Amendment does not bar the plaintiffs' claims against Eldredge. Cf. Cotto, 126 F.4th at 773 ("[I]f an injunction against the Commonwealth defendants could not bring about the relief plaintiffs seek, the Ex parte Young exception does not apply.").

## **IV. Article III Standing**

Eldredge also challenges Escher's Article III standing—and, by extension, the organizational plaintiffs' standing—to maintain the present suit. Article III standing, along with other established justiciability doctrines, implements the Constitution's limitation of the judicial power to the resolution of cases and controversies. See U.S. Const. art. III, § 2; Dep't of Educ. v. Brown, 600 U.S. 551, 561 (2023). The standing doctrine, in essence, tests whether a plaintiff "is entitled to have a federal court adjudicate" his claims. See Kolackovsky v. Town of Rockport, 165 F.4th 114, 120 (1st Cir. 2026) (quoting Hochendoner v. Genzyme Corp., 823 F.3d 724, 733 (1st Cir. 2016)).

"[T]he irreducible constitutional minimum of standing" consists of three elements: injury in fact, traceability, and redressability. See, e.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). These three elements of Article III standing are "an indispensable part of the plaintiff's case." Id. at 561. Each element must therefore be "supported . . . with the manner and degree of evidence required at the successive stages of the litigation" and "in the same way as any other matter on which the plaintiff bears the burden of proof." Id. At the summary judgment phase, the plaintiffs "must point to specific evidence in the record" and cannot "simply rely on 'mere allegations.'" Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 21 (1st Cir. 2016) (quoting Lujan, 504 U.S. at 561).

Standing, moreover, "is not dispensed in gross." TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021). Rather, it rather involves a "plaintiff-specific and claim-specific" inquiry. Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006). Put another way, plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." TransUnion, 594 U.S. 431. If a plaintiff lacks Article III standing, then "there is no case or controversy for the federal court to resolve." Wiener v. MIB Grp., Inc., 86 F.4th 76, 84 (1st Cir. 2023) (quoting TransUnion, 594 U.S. at 442). At the same time, however, the standing analysis "in no way depends on the merits" of the plaintiff's claim. Warth v. Seldin, 422 U.S. 490, 500 (1975)). Thus, in analyzing each plaintiff's standing here, the Court "accept[s] as valid" the contention that the statutory age restriction is unconstitutional. See Brown, 600 U.S. at 564.

### A. Individual Plaintiff Standing

Eldredge asserts that Escher lacks Article III standing because he has not suffered an injury in fact at all. The Court concludes that Escher has met his burden to establish an injury in fact, but for the reasons explained below, that asserted injury is only traceable to Mass. Gen. Laws ch. 140,

§ 131(d). Escher therefore lacks standing to challenge the remaining statutes that he claims are components of Massachusetts' "Ban": Mass. Gen. Laws ch. 140, § 129B(a), (c) and Mass. Gen. Laws ch. 269, § 10(a), (h).

*i. Injury In Fact*

Eldredge argues that Escher lacks standing because he has never applied for or been denied an LTC. Eldredge thus apparently challenges whether Escher's asserted injury in fact is sufficiently concrete and particularized. See TransUnion, 594 U.S. at 423 (explaining that, to be cognizable, an injury in fact must be "concrete, particularized, and actual or imminent"). An injury is "concrete" if it is "real, and not abstract." Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (quotations omitted). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." Id. at 339 (quoting Lujan, 504 U.S. at 560 n.1). That is, a plaintiff cannot advance "only a generally available grievance about government, unconnected with a threatened concrete interest of his own." Lujan, 504 U.S. at 556.

To support his argument that Escher lacks standing, Eldredge relies on Hightower v. City of Boston, 693 F.3d 61, 70 (1st Cir. 2012). In that case, the plaintiff brought an as-applied constitutional challenge against the Boston Police Commissioner and other state officials after her Class A unrestricted firearms license had been revoked.[4] The First Circuit determined that Hightower lacked standing to challenge the constitutionality of the then-extant Class B restricted firearms license because she had "never applied for such a license, been denied one, or had such a license revoked." Id. Eldredge seizes on that determination to argue that the same result should follow here because, as discussed, Escher has never applied for an LTC, been denied one, or had

[4] The license at issue in Hightower had been issued and later revoked pursuant to a now-defunct, pre-Bruen firearms licensing regime under Massachusetts law.

such a license revoked. In so arguing, Eldredge seems to read Hightower to hold that a plaintiff may challenge a licensing regime only if he has first applied for and been denied a license thereunder.

Escher, on the other hand, argues that he need not submit a "futile application" to satisfy the Article III injury requirement because he is "plainly ineligible" under the statutory language of the operative licensing regime. (Pls.' Opp'n at 4.) Escher underscores that unlike the Hightower plaintiff—who was, at least presumptively, eligible to apply for a Class B license but did not do so—he is categorically ineligible to apply for an LTC on account of this age. See Mass. Gen. Laws ch. 140, § 131(d) (establishing that LTC applicant must be, *inter alia*, "21 years of age or older"). Accordingly, Escher says that submitting an LTC "application would be merely a 'futile gesture'" on his part. See Carney v. Adams, 592 U.S. 53, 66 (2020) (assessing standing in First Amendment challenge to state constitution (quoting Teamsters v. United States, 431 U.S. 324, 365–66 (1977))).

Escher has met his burden to demonstrate an injury in fact. The summary judgment record demonstrates not only that Escher's application would be futile, but also that he is "able and ready" to apply for an LTC. See id. at 60 (quoting Gratz v. Bollinger, 539 U.S. 244, 262 (2003); Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 666 (1993)); accord Baughcum v. Jackson, 92 F.4th 1024, 1035 (11th Cir. 2024) (applying Carney to pre-enforcement Second Amendment challenge to state gun law). The parties do not dispute that Escher's age alone renders him categorically ineligible for an LTC. Escher presently holds a valid FID card, which he obtained years ago—indeed, well before this litigation began. His past conduct thus demonstrates a willingness to undergo the procedures required to obtain a firearms license in Massachusetts. Further, it plausibly bolsters Escher's contention that, were it not for the age requirement at issue, he would apply for an LTC. In addition, Escher's claim that he wishes to "acquire a semiautomatic

rifle" as well as "a handgun," which he would carry "in public for self-defense" pursuant to a valid LTC, is supported by the fact that he now owns non-semiautomatic long guns for hunting pursuant to his valid FID card. (Decl. of M. Escher ¶ 5.)

What is more, the First Circuit expressly found that the Hightower plaintiff had standing to challenge the revocation of her Class A license, which was "the only form of Massachusetts license that would allow her to exercise the Second Amendment right she claim[ed] to have." 693 F.3d at 71. So too here: a successful challenge to the LTC's statutory age requirement would authorize Escher to lawfully possess and carry semiautomatic rifles and handguns under the age of twenty-one—the conduct that he contends is protected by the Second Amendment.

Escher has shown that (1) he is "able and ready" to apply for an LTC and that (2) it would be futile for him to submit an LTC application because he falls squarely within the scope of the statutory age restriction established by the plain text of § 131(d). This is adequate to show an injury in fact that is sufficiently concrete and particularized. See TransUnion, 594 U.S. at 423.

*ii. Traceability*

In addition to the injury-in-fact requirement, Escher must also satisfy the second element of Article III standing—traceability—as to each claim he asserts. Although the defendants do not expressly dispute that Escher has met this requirement, the Court has an independent duty to ensure itself of its jurisdiction to adjudicate each claim before it. See, e.g., Pagán, 448 F.3d at 26 ("A federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims, regardless of whether the litigants have raised the issue of standing.").

Traceability is essentially a "causation element." Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020). It "requires the plaintiff to show a

sufficiently direct causal connection between the challenged action and the identified harm." Id. (quoting Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012)).

Escher makes clear that he "would, if the age limitation did not restrict him, apply for and acquire a license to carry and possess semiautomatic firearms and carry a handgun in public *under that license*." (Pls.' Statement of Undisputed Material Facts in Supp. of Summ. J. ("Pls.' SOF") ¶ 6 (emphasis added) (dkt. no. 45); see Decl. of M. Escher ¶ 6 ("If not for the restriction requiring licensees to be 21 years old, I *would apply for and acquire a license to carry, and thereafter lawfully acquire* a semiautomatic rifle and handgun *and carry* a handgun for self-defense in public." (emphasis added)).) Escher's harm is thus plainly traceable to Mass. Gen. Laws ch. 140, § 131(d) because that statute establishes that the holder of an LTC must be at least twenty-one years old.

Turning to the other challenged statutes, Mass. Gen. Laws ch. 269, § 10(a) imposes criminal penalties for the unlicensed carry of a firearm outside of one's home or place of business. See, e.g., Commonwealth v. Guardado, 220 N.E.3d 102, 106–07 (Mass. 2023) (discussing elements of Mass. Gen. Laws ch. 269, § 10(a) after N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022)). Mass. Gen. Laws ch. 269, § 10(h), in turn, imposes criminal penalties for unlicensed possession of a firearm within one's home or place of business. Each statute incorporates by reference the age restrictions set forth in the plain text of Mass. Gen. Laws ch. 140, § 129B (eighteen years old) and § 131(d) (twenty-one years old), respectively, but neither independently establishes an age-related restriction on possession or carry. Yet, here, Escher does not claim that eighteen- to twenty-year-olds have a constitutionally protected right to keep and bear arms *without a license*. On the contrary, his intended course of conduct, absent the age requirement, would be to possess and carry certain classes of firearms in public in Massachusetts

"under" a valid LTC. (Pls.' SOF ¶ 6.) Because neither Mass. Gen. Laws ch. 269, § 10(a) nor § 10(h) independently establishes such an age restriction, the injury that Escher identifies is not traceable to those statutes. He therefore lacks standing to challenge them.

Finally, Escher lacks standing to challenge Mass. Gen. Laws ch. 140, § 129B. Put simply, § 129B does not categorically exclude eighteen- to twenty-year-olds from applying for an FID card. See Mass. Gen. Laws ch. 140, § 129B(a) (stating, in relevant part, that "[a]ny lawful resident 18 years of age or older . . . may submit to the licensing authority an application for a firearm identification card"). The parties do not dispute that Escher successfully applied for and currently possesses a valid FID card. The statute governing the issuance of LTCs provides the holder of that license with entitlements that are "consistent with the entitlements conferred by a firearm identification card issued under section 129B." Id., § 131(c). Thus, absent the age restriction in chapter 140, § 131(d), Escher could apply for an LTC to lawfully possess the firearms that he currently owns pursuant to a valid LTC. Consequently, Escher's identified harm is not traceable to § 129B.

*iii. Redressability*

Assessing Escher's possible standing under the rubric of the redressability requirement leads to the same conclusion. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." California v. Texas, 593 U.S. 659, 671 (2021) (quoting Allen v. Wright, 468 U.S. 737, 753 n.19 (1984)).

Escher asks the Court to declare that the statutory age restriction is unconstitutional and to permanently enjoin the defendants from enforcing it against the plaintiffs, thereby "permit[ting] the Organizational Plaintiffs' 18-to-20-year-old members, such as Escher, to acquire [LTCs]." (Pls.' Br. at 16.) As discussed, only Mass. Gen. Laws ch. 140, § 131 establishes the twenty-one-

year age requirement, which lies at the heart of Escher's complaint. It follows that any relief that the Court may grant beyond the requested declaration and injunction preventing the enforcement of the age restriction under Mass. Gen. Laws ch. 140, § 131(d) would not redress Escher's identified harm. Chapter 140, § 129B independently establishes an eighteen-year minimum age requirement, to which Escher does not object. Escher has stated that, absent the age restriction, he would apply for a valid LTC, which, if granted, he would use to lawfully possess or carry a handgun or other semiautomatic firearm. Accordingly, his proposed course of conduct falls outside the scope of Mass. Gen. Laws ch. 269, § 10, which, as discussed, incorporates the twenty-one-year age requirement only insofar as it restricts *unlicensed* possession or carry of firearms. For these additional reasons, Escher has standing to challenge only the age restriction established in Mass. Gen. Laws ch. 140, § 131(d).

B. Organizational Plaintiff Standing

Next is the question whether the organizational plaintiffs have established their own Article III standing to assert their claims. As an initial matter, the organizational plaintiffs do not claim to have suffered injuries *qua* organizations. But, "[e]ven in the absence of injury to itself," Council of Ins. Agents & Brokers v. Juarbe-Jiménez, 443 F.3d 103, 108 (1st Cir. 2006) (quoting Warth, 422 U.S. at 511), an organization "may establish 'associational standing' to sue in a 'representational capacity,'" Doe v. Trump, 157 F.4th 36, 47 (1st Cir. 2025) (quoting Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343, 345 (1977)), cert. denied, 2026 WL 1871309, at *1 (U.S. June 30, 2026).

To establish associational standing, an organizational plaintiff must demonstrate that: (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose; and" (3) "neither the claim asserted nor the

relief requested requires the participation of individual members in the lawsuit." Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for Bos., 89 F.4th 46, 55 (1st Cir. 2023) (quoting Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co., 585 F.3d 33, 40 (1st Cir. 2009)).

To satisfy the first element of the associational standing inquiry, an organizational plaintiff need only show that "at least one of its members would have standing to sue as an individual." Animal Welfare Inst. v. Martin, 623 F.3d 19, 25 (1st Cir. 2010). As previously mentioned, here, Escher is a member of each organizational plaintiff.[5] (Pls.' SOF ¶ 7.) Accordingly, the organizational plaintiffs have standing to challenge the age restriction established by Mass. Gen. Laws ch. 140, § 131(d) insofar as Escher has standing to do so. The parties do not dispute that other members of the organizational plaintiffs include eighteen- to twenty-year-olds who assert the same injury for which Escher seeks redress.[6] However, the organizational plaintiffs have not proffered record evidence demonstrating that any such members have suffered an injury that *exceeds* the scope of Escher's identified injury. Thus, like Escher, and for the reasons discussed in the Court's analysis of his standing as an individual, the organizational plaintiffs lack standing to challenge Mass. Gen. Laws ch. 140, § 129B or Mass. Gen. Laws ch. 269, § 10.

Turning to the inquiry's second element, the stated purpose of each organizational plaintiff is, in general terms, "to promote and defend the Second Amendment protected rights of their members." (See Pls.' SOF ¶ 8 (citing declarations by a member from each organizational

---

[5] At least one of the defendants disputes whether Escher was a member of Gun Owners of America, an organizational plaintiff, when this action was filed. (See Pls.' Resps. to Def. Heath Eldredge's Statement of Material Facts ¶ 8 (dkt. no. 61).) However, the undisputed record evidence tends to show that Escher joined that organization before filing this action, but his membership mistakenly was not processed or recorded in Gun Owners of America's system until July 16, 2025. (See Decl. of E. Pratt ¶ 5 (dkt. no. 49).) The Court thus treats his membership as undisputed for the present analysis.

[6] The plaintiffs represented as much to the Court at oral argument on the motions. Thus, there is no indication that this controversy will become moot upon Escher's twenty-first birthday.

plaintiff).) That stated purpose plainly intersects with the interests at stake in the present controversy: namely, the permissible scope of the restrictions that the Commonwealth of Massachusetts may impose on the organizations' eighteen- to twenty-year-old members' right to possess and carry firearms. Cf. Animal Welfare Inst., 623 F.3d at 25. The organizational plaintiffs thus satisfy the second element of associational standing.

Finally, as to the third element, neither the requested injunction nor the requested declaration requires the direct participation of individual members of the organizations. The requested declaratory relief "turns on a question of law which is not particular to each member" of the organizations, and thus a favorable declaration would "appl[y] equally to all members" without the "need for individual proof." Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R., 906 F.2d 25, 35 (1st Cir. 1990) (citing UAW v. Brock, 477 U.S. 274, 287 (1986)). The same is true of the requested injunction. To be sure, "not every member may derive any immediate benefit from the injunction," but "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association[s] actually injured." Id. (quoting Warth, 422 U.S. at 515). The organizational plaintiffs thus satisfy the third element of the associational standing inquiry.

The organizational plaintiffs have established their own Article III standing to challenge the age restriction established by Mass. Gen. Laws ch. 140, § 131(d).

## V. Discussion

Having resolved the threshold jurisdictional issues presented by the plaintiffs' challenge, the Court now turns to the merits of the question whether the age restriction established by Mass. Gen. Laws ch. 140, § 131(d) violates the Second Amendment.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S.

Const. amend. II. The Amendment "guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." Bruen, 597 U.S. at 70 (quoting Heller, 554 U.S. at 581). It "was not intended to lay down a novel principle but rather codified a right inherited from our English ancestors." Id. at 20 (quoting Heller, 554 U.S. at 599). The Fourteenth Amendment, in turn, "secured the right to bear arms against interference by the States." United States v. Rahimi, 602 U.S. 680, 690 (2024). "Like most rights," the right to keep and bear arms "is not unlimited." Id. at 690–91 (quoting Heller, 554 U.S. at 626).

Courts engage in a two-step inquiry to determine whether a challenged law violates the Second Amendment. The first step asks "whether 'the Second Amendment's plain text covers'" the proposed conduct. Ocean State Tactical, LLC v. Rhode Island, 95 F.4th 38, 43 (1st Cir. 2024) (quoting Bruen, 597 U.S. at 17), cert. denied, 145 S. Ct. 2771 (2025). Escher seeks to possess and carry semiautomatic firearms in common use, including a handgun, in his home and in public pursuant to a valid license, but the age restriction prevents him from doing so. The plaintiffs argue that the Second Amendment's plain text "covers both possessing privately and carrying publicly arms for self-defense and other lawful purposes" and that Escher is among "the people" whose legitimate interests the Amendment protects. (Pls.' Br. at 5–6.) The defendants do not directly challenge this assertion, but rather "assume" that the Second Amendment covers Escher's intended conduct. (Mem. in Supp. of State Defs.' Mot. for Summ. J. ("Defs.' Br.") at 5 n.3 (dkt. no. 40).) Accordingly, the Court need not decide the issue and moves directly to the second step of the analysis. See United States v. Vizcaíno-Peguero, 175 F.4th 34, 39–40 (1st Cir. 2026).

At step two, the defendants bear the burden "to identify an American tradition justifying" the age restriction. Bruen, 597 U.S. at 38–39. "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory

tradition." Rahimi, 602 U.S. at 692; see id. at 740 (Barrett, J., concurring) ("Historical regulations reveal a principle, not a mold." (citing Bruen, 597 U.S. at 28–29)). Accordingly, the Court must "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" Id. at 692 (majority opinion) (alteration in original) (quoting Bruen, 597 U.S. at 29).

"Why and how the [challenged] regulation burdens the right are central to this inquiry." Id. (citing Bruen, 597 U.S. at 29). Courts assess the "how" by "comparing the 'burden on the right of armed self-defense' imposed by the new regulation to the burden imposed by historical regulations." Ocean State Tactical, 95 F.4th at 44–45 (quoting Bruen, 597 U.S. at 29). Thus, "[e]ven when a law regulates arms-bearing for a permissible reason," it may nevertheless violate the Second Amendment if it regulates "to an extent beyond what was done at the founding." Rahimi, 602 U.S. at 692. Courts assess the "why," in turn, by "comparing the justification for the modern regulation to the justification for historical regulations." Ocean State Tactical, 95 F.4th at 45. If the age restriction "fits within" our Nation's regulatory tradition, then "it is lawful under the Second Amendment." Rahimi at 691. "Only then" may the Court conclude that Escher's proposed "conduct falls outside the Second Amendment's 'unqualified command.'" Bruen, 597 U.S. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

The defendants say that the historical record they have adduced demonstrates "a robust historical tradition of restrictions on the functional and legal ability of minors under the age of 21 to access firearms" from the Founding through the nineteenth century. (See Defs.' Joint Mem. in Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Opp'n") at 1 (dkt. no. 58).) The defendants first rely on a Founding-era legal custom known as the infancy doctrine. The doctrine, which derives from the

English common law, "made its way across the Atlantic" and was "routinely applied" by early American courts. See McCoy v. ATF, 140 F.4th 568, 575 (4th Cir. 2025) (collecting cases), cert. denied, 2026 WL 1871297, at *1 (U.S. June 30, 2026); accord Bruen, 597 U.S. at 39 (explaining that the text of the Constitution should be interpreted "by reference to the common law and to British institutions as they were when the [Constitution] was framed and adopted" (emphasis removed) (quoting Ex parte Grossman, 267 U.S. 87, 108–09 (1925))). In practice, the defendants argue, the infancy doctrine severely limited or altogether precluded persons under the age of twenty-one from entering into contracts, which were integral to the predominately credit-based economies of the Founding era.

The defendants contend that firearms were not included among the doctrine's limited exceptions for "certain practical necessities," (Defs.' Br. at 9), and thus, it was "practically impossible for persons under age 21 to acquire firearms" at the Founding, (Defs.' Opp'n at 6). To substantiate this contention, the defendants identify Founding-era state laws, including one from Massachusetts, that required parents or guardians to furnish minors serving in the militia with arms. (Defs.' Br. at 11 (citing 1793 Mass. Acts 297).) The defendants also point to other contemporaneous state laws that allowed fines to be levied against parents if a minor (*i.e.*, a person under twenty-one) in their care failed to obtain a firearm for militia service. These and other similar laws, the defendants say, "constitute widespread acknowledgment" that even the requirements of militia service did not allow minors to avoid the infancy doctrine's age-based legal restrictions on their ability to obtain firearms, among other goods. (Id. at 12.)

Next, the defendants cite a number of nineteenth century state laws that expressly regulated the sale of firearms to, or the possession and carry of firearms by, minors. Relying on expert reports submitted in support of their motion, the defendants contend that these laws responded to the

decline and eventual obsolescence of the infancy doctrine as a result of the concomitant rise of industrialization and market-based economies during the nineteenth century. See NRA v. Bondi, 133 F.4th 1108, 1138 (11th Cir. 2025) (Rosenbaum, J., concurring) (explaining that "between 1820 and 1870, our nation's urban population grew at three times the rate of our national population" and "by halfway through the 1800s, a 'market-based economy' had replaced the farm economy"), cert. denied, 2026 WL 1871313 (U.S. June 30, 2026).

The defendants posit that the confluence of these social and economic forces "meant that Under-21s could now purchase cheap, widely available guns." Id. at 1139. The result, according to the defendants' experts, was a marked increase in "juvenile violence." (Defs.' Br. at 15 (citing Corrected Report and Decl. of B. Rivas at ¶¶ 35–42 (dkt. no. 41-8).) The defendants further note that "[b]y the end of the nineteenth century, roughly 55 percent of the population of states admitted to the Union . . . restricted the purchase or use of certain firearms by minors." (Id. at 16 (first alteration in original) (quoting Bondi, 133 F.4th at 1122).) Many, though not all, of these restrictions drew the age limitation at twenty-one years old, and they "went largely unchallenged." McCoy, 140 F.4th at 579 (citing Patrick J. Charles, Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry 156 (2019)); see id. ("As far as we can tell, the Tennessee Supreme Court was the only court to consider the constitutionality of these laws, and it held that they were constitutional." (citing State v. Callicutt, 69 Tenn. 714, 716–17 (1878)).

The plaintiffs counter that the defendants have failed to meet their burden to establish that the age restriction is consistent with the Nation's history of firearms regulation. First, the plaintiffs argue that the infancy doctrine is not a proper historical analogue because it regulated firearms incidentally, and only insofar as it regulated all goods, whereas the age restriction directly regulates the possession and carry of firearms. In addition, the plaintiffs contend that the Massachusetts

"Ban" on possession fails at step two of the Bruen inquiry because the Founding-era militia laws on which the defendants rely conclusively establish that eighteen-year-olds possessed firearms in connection with their militia service, and their right to do so did not derive from their service. Therefore, the plaintiffs argue, the infancy doctrine—which regulated "whether or how" eighteen- to twenty-year-olds could *acquire* firearms, not possess them—is "effectively a moot point." (Pls.' Opp'n at 15.)

Under that thesis, the defendants have failed to meet their burden at step two of the Bruen inquiry. That is so, according to the plaintiffs, because even if the defendants are correct that the proffered historical record "yields a principle that permits the Commonwealth to place limitations on the rights of 'minors' with respect to firearms," (id. at 8), a historical tradition of placing firearms restrictions on minors does not sanction the imposition of those same restrictions on legal adults. Yet, in the plaintiffs' view, the age restriction does just that: it categorically bans eighteen- to twenty-year-olds from possessing firearms in common use, even though they are generally regarded as legal adults under Massachusetts law. (See Pls.' Br. at 1 (citing Mass. Gen. Laws ch. 4, § 7 (defining "Adult" as "any person who has attained the age of eighteen")).)

The historical record before the Court reveals that the "*pre-existing* right" "codif[ied]" by the Second Amendment, Bruen, 597 U.S. at 25 (emphasis in original), tolerated restrictions on minors' ability to possess and carry firearms. The statutory age restriction fits within that principle—distilled from our Founding-era regulatory tradition—in both why and how it burdens the Second Amendment right of eighteen- to twenty-year-olds.

The age restriction is an example of how "Massachusetts, like most States, distinguishes emerging adults from older adults on a range of issues, granting rights and imposing responsibilities in a graduated manner." See Commonwealth v. Mattis, 224 N.E.3d 410, 426

(Mass. 2024); see also Free Speech Coal., Inc. v. Paxton, 606 U.S. 461, 479 (2025) (collecting examples of state laws requiring age verification). By distinguishing between emerging eighteen- to twenty-year-old adults on the one hand and adults twenty-one and older on the other, the statutory age restriction establishes a "narrow, objective, and definite standard[]." See Bruen, 597 U.S. at 39 n.9 (quoting Shuttlesworth v. Birmingham, 394 U.S. 147, 151 (1969)). Bruen did not call into question the constitutionality of such standards. See id.; Heller, 554 U.S. at 626–27.

Further, the upper limit of this objective standard is coextensive with the common rule that prevailed at the Founding, when "[f]ull age in male or female" was understood to be "twenty-one years." See Bondi, 133 F.4th at 1117 (alteration on original) (quoting 1 William Blackstone, Commentaries on the Laws of England (George Sharswood ed., 1893)); see also Rocky Mountain Gun Owners v. Polis, 121 F.4th 96, 124 (10th Cir. 2024) ("[A]t the Founding most states set the age of majority at 21."). The Reconstruction-era laws discussed above, in turn, provide "confirmation of" what the Founding-era antecedents evince. See Bruen, 597 U.S. at 36–37 (quoting Gamble v. United States, 587 U.S. 678, 702 (2019)).

What is more, the statutory age restriction "does not broadly restrict arms use by the public generally." Rahimi, 602 U.S. at 698. The plaintiffs characterize Massachusetts' firearms licensing regime—and, by implication, the statutory age restriction—as a "Ban," but Massachusetts law permits eighteen- to twenty-year-olds to possess certain classes of firearms pursuant to a valid Massachusetts FID card. That is evident from the undisputed fact that Escher currently owns firearms pursuant to a valid FID card. Moreover, like the Founding-era militia laws, Massachusetts law contains an exception to the age restriction for military service. Of course, that is not the only exception: even outside of the military context, Massachusetts' regime also allows minors to

temporarily possess semiautomatic firearms for certain lawful activities—including firearms instruction and hunting—while under the supervision of properly licensed adults.

Nevertheless, the plaintiffs claim that, for eighteen- to twenty-year-olds, the age restriction relegates the Second Amendment to the status of a "second-class right." That argument conflates regulation with relegation. Even "[f]undamental rights that turn on age" may be subject to "a reasonable, bona fide age-verification requirement."[7] See Paxton, 606 U.S. at 479 (First Amendment challenge (citing, *inter alia*, Bruen, 597 U.S. at 39 n.9); see also Ginsberg v. New York, 390 U.S. 629, 638 (1968) (explaining that "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults," "even where there is an invasion of protected freedoms").

Bruen requires a historical analogue, not a historical twin. See, e.g., Rahimi 602 U.S. at 701. Because our national tradition allows the government to impose reasonable age-based restrictions on minors' access to firearms, the age requirement established by Mass. Gen. Laws ch. 140, § 131(d) is constitutional as applied to Escher and the eighteen- to twenty-year-old members of the organizational plaintiffs.

[7] As the Bruen decision expressly acknowledges, the Supreme Court's Second Amendment jurisprudence has "repeatedly compared" the freedom of speech with the right to keep and bear arms. Bruen, 597 U.S. at 24 (citing Heller, 554 U.S. at 582, 595, 606, 618, 634–35).

## VI. Conclusion

For the foregoing reasons, the plaintiffs' motion for summary judgment (dkt. no. 43) is DENIED. Noble's motion for summary judgment (dkt. no. 39) is GRANTED. Gagnon's motion for summary judgment (dkt. no. 39) is GRANTED. Eldredge's motion for summary judgment (dkt. no. 53) is GRANTED. Judgment shall enter in favor of the defendants.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge