# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ~~MACK ESCHER~~LOLA CRISP, GUN OWNERS' ACTION LEAGUE, COMMONWEALTH SECOND AMENDMENT, FIREARMS POLICY COALITION, INC., SECOND AMENDMENT FOUNDATION, NATIONAL RIFLE ASSOCIATION OF AMERICA, and GUN OWNERS OF AMERICA, INC., | CIVIL ACTION NO. 1:25-cv-10389 |
| Plaintiffs, | |
| -against- | **AMENDED CIVIL RIGHTS COMPLAINT** 42 U.S.C. § 1983 |
| COLONEL GEOFFREY NOBLE, in his official capacity as Superintendent of the Massachusetts State Police and of the Commonwealth of Massachusetts, JAMIE GAGNON, in his official capacity as Commissioner of the Department of Criminal Justice Information Services, and ~~HEATH J. ELDREDGE~~JEAN CHALLIES, in ~~his~~ her official capacity as the Chief of Police of ~~Brewster~~Barnstable, Massachusetts, | |
| Defendants. | |

Come now Plaintiffs ~~Mack Escher~~Lola Crisp ("Individual Plaintiff"), Gun Owners' Action League, Commonwealth Second Amendment, Firearms Policy Coalition, Inc., Second Amendment Foundation, National Rifle Association of America, and Gun Owners of America, Inc. (collectively "Organizational Plaintiffs") and allege against the Defendants named herein as follows:

**INTRODUCTION**

1. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Under this constitutional provision, the law-abiding 18-to-20-year-old citizens of the Commonwealth, including members of Plaintiffs Gun Owners' Action League; Commonwealth Second Amendment; Firearms Policy Coalition, Inc.; Second Amendment Foundation; National Rifle Association of America; and Gun Owners of America, Inc. such as Plaintiff ~~Mack Escher~~Lola Crisp, have an enumerated right to keep and bear common firearms for defense of self and family and for other lawful pursuits.

2. The Second Amendment's protection of "the people" covers "all members of the political community, not an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008). Therefore, the right presumptively "belongs to all Americans." *Id.* at 581.

3. As for "Arms," "the Second Amendment protects the possession and use of weapons that are 'in common use at the time.' " *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 21 (2022) (quoting *Heller*, 554 U.S. at 627). The United States Supreme Court has, accordingly, rejected the notion that the Second Amendment applies "only to muskets and sabers." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). Rather, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Bruen*, 597 U.S. at 28 (quoting *Heller*, 554 U.S. at 582).

4. But in H.B. 4885, Massachusetts has enacted, and Defendants have authority to enforce, wide-ranging restrictions on that right. For 18-to-20-year-old adult residents of Massachusetts like ~~Escher~~Crisp, H.B. 4885 bans purchasing, possessing, or carrying *any* handgun or semiautomatic firearm whatsoever.

5. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its [challenged] regulation, the government … must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

6. Applying that analysis here is fatal to the challenged laws. Adults between the ages of 18 and 20 are part of "the people," and there is no historical tradition of limiting the firearms rights of adults on account of their age. And as for the types of firearms that Massachusetts forbids them from owning, much less carrying, there can be no dispute that they qualify as "arms" within the "plain text" meaning of the Second Amendment. *See Heller*, 554 U.S. at 581 (adopting Samuel Johnson's 18th-century definition as any "[w]eapons of offence, or armour of defence"). Handguns and semiautomatic firearms are, in fact, the most popular types of firearms in the country today, and there is no Founding-era historical tradition of banning commonly owned firearms. Indeed, the Supreme Court already has held that *both* are common types of arms. *See id.* at 629 ("Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid."); *Staples v. United States*, 511 U.S. 600, 612 (1994) (noting that semiautomatic firearms "traditionally have been widely accepted as lawful possessions"); *see also Garland v. Cargill*, 602 U.S. 406, 430 (2024) (Sotomayor, J., dissenting) (noting that semiautomatic rifles are "commonly available").

7. Therefore, the laws challenged here are unconstitutional and must be enjoined.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the Commonwealth of Massachusetts, of the rights, privileges, or immunities secured by the United States Constitution.

9. Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in the District where the action is being brought.

10. The Eastern Division of this Court is appropriate pursuant to Local Rule 40.l(d)(l)(c) because all parties residing in the District reside in the Eastern Division.

## PARTIES

### Plaintiffs

11. Plaintiff ~~Mack Escher~~Lola Crisp is a natural person residing in ~~Brewster~~West Barnstable, Barnstable County, Massachusetts. ~~He~~ She is 17 years old ~~an adult over the age of 18 but under 21~~, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. ~~Escher~~ Crisp is a member of each of the Organizational Plaintiffs.

12. Plaintiff Gun Owners' Action League ("GOAL") is a nonprofit organization dedicated to promoting safe and responsible firearms ownership, marksmanship, competition, and hunter safety throughout Massachusetts. GOAL brings this action on behalf of its members, including ~~Escher~~Crisp, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

13. Plaintiff Commonwealth Second Amendment ("Comm2A") is a nonprofit organization dedicated to promoting a better understanding of the rights guaranteed by the Second Amendment to the United States Constitution. Comm2A brings this action on behalf of its members, including ~~Escher~~Crisp, who are adversely and

directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

14. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit membership organization that works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. FPC brings this action on behalf of its members, including ~~Escher~~Crisp, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

15. Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated in 1974. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical, and economic research, publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. SAF brings this action on behalf of its members, including ~~Escher~~Crisp, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

16. Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation founded in 1871. NRA is America's oldest civil rights organization and America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. NRA has millions of members across the nation, including in Massachusetts. NRA brings this action on behalf of its members, including ~~Escher~~Crisp, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

17. Plaintiff Gun Owners of America ("GOA") is a California non-stock corporation with its principal place of business in Springfield, Virginia. GOA is organized and operated as a nonprofit membership organization that is exempt from

federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than 2 million members and supporters across the country, including many within Massachusetts, many of whom reside in this District. GOA brings this action on behalf of its members, including ~~Escher~~Crisp, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

**Defendants**

18. Defendant Col. Geoffrey Noble is sued in his official capacity as the Superintendent of the Massachusetts State Police. As Superintendent, Defendant Noble is responsible for assisting local police chiefs with processing applications for licenses to carry. Defendant Noble is statutorily charged with receiving copies of all applications for licenses to carry within 7 days of their submission and advising the licensing authority within 30 days of receipt whether the applicant is ineligible for any reason—a determination that includes running a National Instant Criminal Background Check on the individual and checking for disqualifying information in the Commonwealth's possession. Mass. Gen. L. ch. 140, § 121F(d). Furthermore, as head of the State Police, Defendant Noble enforces the laws that prohibit possessing and carrying firearms without a license. Mass. Gen. L. ch. 22C, §§ 2, 6.

19. Jamie Gagnon is sued in his official capacity as the Commissioner of the Department of Criminal Justice Information Services. As Commissioner, Defendant Gagnon oversees the Department in its role of informing licensing authorities of any disqualifying condition, including a failure to meet an age restriction, for any applicant for a license to carry. Mass. Gen. L. ch. 140, § 121F(e), (h).

20. Defendant Chief ~~Heath J. Eldredge~~ Jean Challies is sued in ~~his~~ her official capacity as the Chief of Police of ~~Brewster~~Barnstable, Massachusetts. As Chief of Police, Defendant ~~Eldredge~~ Challies is the official charged with reviewing and granting applications for licenses to carry in the town of ~~Brewster~~Barnstable. *See* Mass. Gen. L. c. 140, § 121.

## THE REGULATORY SCHEME AND THE SECOND AMENDMENT

21. On July 25, 2024, Governor Maura Healey signed an omnibus bill altering in several respects existing Massachusetts laws pertaining to firearms. *See An Act Modernizing Firearm Laws*, H.B. 4885 (signed July 25, 2024).

22. As relevant here, H.B. 4885 enacts special restrictions on 18-to-20-year-old adults. Indeed, H.B. 4885 entirely *bans* 18-to-20-year-olds from acquiring, possessing, or carrying any semiautomatic firearm of any type or any handgun.

23. As revised, Massachusetts law permits individuals to possess, purchase, transfer, and carry firearms either pursuant to a license to carry, *see* Mass. Gen. L. ch. 140, § 131, or with a firearm identification card, *see* Mass. Gen. L. ch. 140, § 129B.

24. Without an appropriate license, carrying a firearm or possessing it anywhere other than one's home or place of business is a felony, Mass Gen. L. ch. 269, § 10(a), and it is a misdemeanor to possess such a firearm in the home, Mass Gen. L. ch. 269, § 10(h); Mass. Gen. L. ch. 140, § 129C(a) (listing narrow exceptions not applicable here).

25. Defendants Noble, Gagnon, and ~~Eldredge~~ Challies are charged with processing applications for licenses and granting them to eligible individuals. *See* Mass. Gen. L. ch. 140, §§ 121, 121F(d), 121F(e), 121F(h).

26. However, 18-to-20-year-olds are eligible only for a firearm identification card. *See* Mass. Gen. L. ch. 140, §§ 129B(a), 131(d). And a firearm identification card does not permit its holder to purchase, possess, or transfer any handguns or semiautomatic firearms. Mass. Gen. L. ch. 140, § 129B(c).

27. Massachusetts's expected justification for so severely restricting the rights of 18-to-20-year-olds is their age. But 18-to-20-year-olds are adults. Yet Massachusetts nevertheless accords them no more autonomy in this area than a 15-year-old child with a note from his parents. *See* Mass. Gen. L. ch. 140, § 129B(1)(v) (permitting 18-year-olds generally and 15-year-olds with "a certificate of a parent or guardian granting the applicant permission" to apply for a firearm identification card on equal footing).

28. This justification has no basis in either the text of the Second Amendment or our nation's history. As a textual matter, the Second Amendment protects the rights of "the people" without respect to age.

29. Historically, 18-year-olds always have been understood to be part of "the people" who have the right to carry and own firearms. On May 8, 1792, mere months after the Second Amendment was ratified, Congress mandated that "every free able-bodied white male citizen … *who is or shall be of the age of eighteen years*, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia." Militia Act of 1792, ch. 33, § 1, 1 Stat. 271 ("Militia Act") (emphasis added).

30. The individual states followed suit and enrolled males aged 18 as part of the militia. And as a member of the militia, 18-year-olds were *required* to keep and bear the same sort of common firearms that older citizens owned.

31. This historical evidence therefore establishes a tradition of acquisition, ownership, possession, *and* public carry of commonly owned firearms by 18-to-20-year-olds—all conduct that Defendants now deny Plaintiffs.

32. Unsurprisingly, while historical tradition *required* 18-to-20-year-olds to be armed, there were *zero* laws from the period surrounding the ratification of the Second Amendment that specifically restricted the ability of 18-to-20-year-olds to acquire or carry common firearms for lawful purposes.

33. This Founding-era understanding controls, and subsequent historical enactments and practices which contradict "the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, 597 U.S. at 36 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)); *see also id.* at 37 (quoting *Gamble v. United States* 587 U.S. 678, 702 (2019)) ("19th-century evidence was 'treated [in *Heller*] as mere confirmation of what the Court thought had already been established.' "); *Rahimi*, 602 U.S. at 692 (quoting *Bruen* 597 U.S. at 29) (emphasis added) ("apply[ing] faithfully the balance struck by *the founding generation* to modern circumstances.").

34. Consistent with this rationale, a number of courts already have held that 18-to-20-year-olds belong to "the people" whose Second Amendment rights must be respected. *See Worth v. Jacobson*, 108 F.4th 677, 689 (8th Cir. 2024); *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 438 (3d Cir. 2025); *Reese v. BATFE*, ~~---~~ 127 F.4th 583, 595~~---, 2025 WL 340799, at *9~~ (5th Cir. 2025).

35. Furthermore, the types of firearms 18-to-20-year-olds are banned from owning and carrying are protected by the Second Amendment. In *Heller*, the Supreme Court explained that arms that are "in common use at the time for lawful purposes" are categorically protected. 554 U.S. at 624 (quotation marks omitted).

36. Semiautomatic firearms are indisputably "in common use" for lawful purposes. *See Staples*, 511 U.S. at 612. As are handguns. *See Heller*, 554 U.S. at 627. There is, therefore, no basis to ban their possession by a group of people who have full Second Amendment rights.

**THE EFFECT OF THE LAW ON PLAINTIFF ~~ESCHER~~CRISP**

37. ~~Mack Escher~~Lola Crisp is a law-abiding, responsible~~, adult~~ resident of ~~Brewster~~West Barnstable, Massachusetts, ~~over 18 years of age but under 21.~~17 years of age.

38. ~~Escher~~ Crisp is a student ~~at Massachusetts Maritime Academy~~ and a holder of a firearm identification card.

39. ~~He~~ She is a member of each of the Organizational Plaintiffs.

40. ~~Escher~~ Crisp enjoys hunting for recreation and also desires to own and carry a firearm to defend ~~himself~~herself. ~~He~~ She has, in the past, legally used ~~his~~ her father's semiautomatic ~~rifle~~ shotgun to hunt.

41. ~~Because Escher is limited by Massachusetts's law, and Defendants' enforcement of the same, to holding a firearm identification card, he is ineligible to purchase or possess any handgun or semiautomatic firearm, or to carry a handgun in public for self-defense.~~Crisp is ineligible, under Massachusetts law, to acquire a license to carry, until she turns 21. As such, until she turns 21 she is ineligible to purchase or possess any handgun or semiautomatic firearm, or to carry a handgun in public for self-defense.

42. ~~Escher would, but for the laws at issue in this case and Defendants' enforcement of the same, acquire a license to carry and then acquire and carry a Smith & Wesson semiautomatic handgun for self-defense, and acquire and possess a semiautomatic rifle chambered in 5.56mm for hunting and target shooting.~~ Crisp would, but for the laws at issue in this case, acquire a license to carry upon turning 18 and then acquire a handgun and carry it in public on occasion for self-defense. She would also, upon turning 18, acquire a semiautomatic shotgun and use it for hunting.

**COUNT I**

**DEPRIVATION OF RIGHTS**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV**
**42 U.S.C. § 1983 and *Ex parte Young***

43. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

44. There is an actual and present controversy between the parties.

45. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. This restriction is incorporated against the Commonwealth of Massachusetts through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

46. The Commonwealth's laws prohibit law-abiding adults who are protected by the Second Amendment from possessing common arms that are protected by the Second Amendment.

47. 42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of rights secured by the Constitution under color of state law. And *Ex parte Young*, 209 U.S. 123 (1908), recognizes a right in equity to seek declaratory and injunctive relief to end an ongoing violation of federal law or the Constitution. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

48. Plaintiff ~~Escher~~Crisp, a member of each of the Organizational Plaintiffs, is legally eligible to exercise ~~his~~ her Second Amendment-protected rights and wishes

to keep and bear constitutionally protected arms for self-defense and other lawful purposes.

49. Defendants have violated the right to keep and bear arms by precluding 18-to-20-year-olds from purchasing, possessing, and carrying semiautomatic firearms and handguns, because Defendants deny those individuals the right to acquire licenses to carry under the laws at issue in this case.

50. Defendants' enforcement of these provisions and any related statutes, regulations, policies, practices, and customs is an infringement and an impermissible burden on the right of 18-to-20-year-olds, including members of Organizational Plaintiffs such as Plaintiff ~~Escher~~Crisp, to keep and bear arms pursuant to the Second and Fourteenth Amendments to the United States Constitution.

51. Defendants' enforcement of these provisions and any related statutes, regulations, policies, practices, and customs forces 18-to-20-year-olds either to comply with the unconstitutional mandate—thereby forfeiting their rights under the Second and Fourteenth Amendments to the United States Constitution—or be subjected to criminal prosecution.

52. Therefore, as a direct and proximate result of the above infringement and impermissible burden on Second and Fourteenth Amendment rights, 18-to-20-year-old members of Organizational Plaintiffs such as Plaintiff ~~Escher~~ Crisp have suffered—and continue to suffer—from an unlawful and irreparable deprivation of their constitutional right to keep and bear arms.

**PRAYER**

WHEREFORE, Plaintiffs pray for the following relief:

1. Declare that the ban on 18-to-20-year-old adults possessing and carrying semiautomatic firearms and handguns, consisting of Mass. Gen. L. ch. 140, §§ 129B(a), (c), 129C(a), 131(d), and Mass. Gen. L. ch. 269, §§ 10(a), (h), and all related laws, regulations, policies, and procedures, violates the right to keep and bear arms, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

2. Permanently enjoin each Defendant, each Defendant's respective employees, officers, agents, and representatives, and all those acting in concert or participation with him or her, from enforcing the ban on granting 18-to-20-year-old adults licenses to carry, such that Defendants allow 18-to-20-year-old adults to apply for and be granted such licenses notwithstanding Mass. Gen. L. ch. 140, §§ 129B(a), (c), 129C(a), 131(d), and Mass. Gen. L. ch. 269, §§ 10(a), (h), and all related laws, regulations, policies, and procedures;

3. Award Plaintiffs attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

4. Grant any and all other further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated [DATE]

Respectfully submitted,

Jason A. Guida (BBO# 667252)
Principe & Strasnick, P.C.
17 Lark Avenue
Saugus, MA 01960
(617) 383-4652
jason@lawguida.com

*/s/ David H. Thompson*
David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Admitted *pro hac vice*

~~Respectfully submitted, the Plaintiffs,~~

~~/s/ Jason Guida~~
~~Jason Guida (BBO# 667252)~~
~~Law Office of Jason A. Guida~~
~~17 Lark Avenue~~
~~Saugus, MA 01906~~

~~(617) 383-4652~~
~~jason@lawguida.com~~

~~David H. Thompson*~~
~~Peter A. Patterson*~~
~~William V. Bergstrom*~~
~~COOPER & KIRK, PLLC~~
~~1523 New Hampshire Ave., N.W.~~
~~Washington, D.C. 20036~~
~~Telephone: (202) 220-9600~~
~~Facsimile: (202) 220-9601~~
~~dthompson@cooperkirk.com~~
~~ppatterson@cooperkirk.com~~
~~wbergstrom@cooperkirk.com~~

~~**Pro hac vice* fortheoming~~

~~*Attorneys for Plaintiffs*~~